# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE CHRISTIAN : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: 2:24-cv-01319 |
| v. : | |
| : | |
| OMNIS GLOBAL TECHNOLOGIES, LLC : | |
| and : | |
| OMNIS BUILDING TECHNOLOGIES, LLC : | |
| and : | |
| OBT BLUEFIELD, LLC : | |
| and : | |
| OMNIS FUEL TECHNOLOGIES LLC : | |
| d/b/a OMNIGEN : | |
| and : | |
| OMNIS SUBLIMATION RECOVERY : | |
| TECHNOLOGIES, LLC : | |
| : | |
| Defendants. : | |
| : | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE

Plaintiff, Michelle Christian ("Ms. Christian") by and through her undersigned counsel, hereby responds as follows to Defendants' Motion to Transfer Venue and relies upon the Brief attached hereto in support of her Response.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*
Christine E. Burke, Esq.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
Attorneys for Plaintiff

Date: June 11, 2024

## I.  INTRODUCTION/PROCEDURAL BACKGROUND

On March 28, 2024, Ms. Christian filed a Complaint against her prior joint/integrated employers: Omnis Global Technologies, LLC, Omnis Building Technologies, LLC, OBT Bluefield, LLC, Omnis Fuel Technologies, LLC d/b/a/ Omnigen, and Omnis Sublimation Recovery Technologies, LLC (*hereinafter* collectively referred to as "Defendants").  *See* Exhibit A.  Ms. Christian asserts therein she was unlawfully terminated from her employment with Defendants in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq.*)("Title VII"),[1] the False Claims Act (31 U.S.C. § 3730(h)(1))("FCA"), and that Defendants failed to to pay certain bonuses promised, sounding in claims for unjust enrichment, breach of contract, promissory estoppel and the Pennsylvania Wage Payment and Collection Law ("WPCL")(43 Pa. Stat. Ann. § 260.9). *Id,*  On May 28, 2024, Defendants filed the current Motion to Transfer Venue, and a separate Motion to Dismiss on other grounds.  Dkt. Nos.:10, 11.

First, Title VII has its own exclusive venue provision.  This provision gives plaintiffs several *choices* regarding where to pursue civil rights violations asserted thereunder – and one (1) of those choices is the forum where the employee worked.  Defendants hired Ms. Christian to work from her home in Bucks County Pennsylvania – to work remotely from her home office.  As business needs arose, Ms. Christian also traveled for work – but to places across the Country, and predominantly to Washington D.C. (not West Virginia).[2]  Given that Ms. Christian was hired to work in Pennsylvania, performed the bulk of her work duties in Bucks County, Pennsylvania, venue is proper here under Title VII's exclusive venue provision.

---

[1] And noticed her intent to pursue mirroring violations of state law under the Pennsylvania Human Relations Act ("PHRA").

[2] *See* Exhibit B, attached hereto, containing a counter affidavit for this Court's consideration on the proofs substantiating venue is more than proper in this District.

1

Defendants insist that venue be had at their principal office: West Virginia.  Under Title VII, Courts are to consider venue at the employer's principal office *as a last resort* – and <u>only if venue is not found to be proper under any of the other three (3) ways in which a plaintiff is permitted to *choose* a venue</u>.[3]  This is simply not the case here, and Ms. Christian chose this District as she worked here, and felt all effects of Defendants' discriminatory actions here.[4] (Meeting two (2) of the three (3) ways in which a Plaintiff can establish venue under Title VII).  Defendants' briefing impermissibly suggests this Court should choose for the Plaintiff under Title VII's venue provision (i.e. where their records are kept, or where they claim *some* of the discriminatory activity may have taken place).  If venue is proper, which it is, Defendants' sole recourse for transfer at this point is: 28 U.S.C. § 1404(a).

As to Defendants' alternative argument, pursuant to 28 U.S.C. § 1404(a), Ms. Christian is

---

[3] The "last permissible venue location for a Title VII claim is triggered if the defendant cannot be found in a proper district under the first three provisions." *Soul v. Movado Retail Grp., Inc*., No. 1:06-CV-2115, 2007 U.S. Dist. LEXIS 26323, at *9 (M.D. Pa. Apr. 10, 2007). The rationale for this is simple, Congress sought to avoid employer attempts to increase the costs of vindicating one's civil rights. "In crafting Title VII, Congress entrusted private party litigants to serve as the primary regulators of employment discrimination in this country. J. Maria Glover, *The Structural Role of Private Enforcement Mechanisms in Public Law*, 53 Wm. & Mary L. Rev. 1148-50. Another District Court summarized Congress' intent in this regard:

> Under 42 U.S.C. § § 2000e-5(f)(3), venue is considered proper in the judicial district in which the defendant maintains his principal office (presumably the most convenient forum for the defendant) only if the defendant is not found in 1) the state in which the alleged discrimination occurred; 2) the judicial district in which relevant employment records are kept; or 3) the judicial district in which the Plaintiff would have worked but for the alleged discriminatory practice—all districts that are presumably more convenient for the plaintiff. *Id.* **The most plausible interpretation of Congress's choice to make the defendant's principal place of business the venue of last resort is that it was concerned "that national companies with distant offices might try to force plaintiffs to litigate far from their homes," and thereby chill private enforcement of civil rights by making private suits cost prohibitive."**

*Luderus v. United States Helicopters, Inc*., No. 12-CV-5094, 2013 U.S. Dist. LEXIS 27989, at *9 (N.D. Ill. Feb. 25, 2013)(citations omitted).

[4] "[V]enue is appropriate in both the forum in which the employment decision is made and the forum in which that decision is implemented or its effects are felt." *See Dean v. HandySoft Corp*., No. 04-5387, 2005 U.S. Dist. LEXIS 2127, at *6 (E.D. Pa. Feb. 16, 2005)(citing *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 505-06 (3d Cir. 2000) (discussing the fact that allowing employees to work from home offices creates additional proper venues in Title VII actions)).

entitled to *substantial deference* in her choice of forum, particularly given this is her home forum and where she worked for the Defendants. "**It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice "* * * should not be lightly disturbed**." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)(asterisks in original)(emphasis added). Defendants make no mention of this deference afforded to a Ms. Christian's choice of venue in her home forum.

In any event, in arguing the *Jumara* factors, the Defendants vaguely suggest the "operative facts" occurred elsewhere which is simply not the case – as Plaintiff worked here, and felt all effects of the adverse decisions/hostile work environment here. The Defense separately argues it would be more convenient for the "witnesses and Parties." 1.) As to witnesses, given the nature of Defendants' business operations (which includes a majority of remote executive level employees like Ms. Christian), Ms. Christian presents a counter affidavit setting forth proposed material witnesses in this case, most of whom are scattered across the United States (and by no means are local to WV). 2.) As to where the incidents occurred, Defendants attempt to argue that because 1 or 2 meetings may have taken place in WV, the discriminatory acts occurred there, which is simply not the case (nor compatible with *Passantino, supra* 212 F.3d 493).

Transferring Ms. Christian's case to West Virginia would be substantially more burdensome to her and her Pennsylvania based witnesses (including her treating medical providers who are here). Defendants, quite frankly, are a multimillion-dollar grouping of corporate companies who conduct substantial business operations in this state;[5] their *select* few high-level witnesses actually residing in WV (which aren't many) are far better situated to bear the cost

---

[5] Defendant's operate one of their primary facilities in Pennsylvania; in particular a large coal facility in West Finley Township, PA, where Ms. Christian traveled for work on various occasions. *See* Exhibit B.

3

associated with traveling to a different forum compared to Ms. Christian and her individual witnesses. More importantly, they cannot show they would be unavailable to appear for a trial here.[6]

Finally, it wreaks of unclean hands that Defendants have very recently brought a separate action *against* Ms. Christian to recover a roughly $1,000.00 laptop computer they claim was not properly returned, in the Commonwealth of Pennsylvania, Bucks County, admitting Ms. Christian "worked remotely for Omnis" here. *See* Exhibit C, attached hereto. While vigorously suing Ms. Christian here in Bucks County PA, there is no purported inconvenience to potentially hail any of their witnesses in (if need be) into court in Pennsylvania.

The sole basis Defendants wish to transfer venue of this sex/religious based discrimination and FCA Complaint is to make it cost prohibitive for Ms. Christian. This flies in the face Title VII's exclusive venue provisions and the Congressional intent underlying same, as well as clear case law giving deference to a Plaintiff's choice of venue and in the clear interests of justice.

## II.     FACTUAL BACKGROUND

Ms. Christian is a Pennsylvania resident, who resides less in this District. Ex. A at ¶ 8. At all times, Ms. Christian worked remotely at her home address for Defendants. Ex. A at ¶ 16. Ms. Christian was hired by Defendant Omnis Global Technologies, LLC on November 16, 2020, as its Vice President of Government Relations, with an annual salary of $250,000. Exhibit A at ¶¶ 14,

---

[6] Judge Padova aptly pointed out the mere claim of potential "inconvenience" for witnesses is not the real question:

> While Defendant submits that Kansas would be a more convenient forum for the witnesses, Defendant fails to show that any witness would be unwilling to appear in Pennsylvania, or that deposition testimony could not be used in lieu of live testimony. *Jumara*, 55 F.3d at 879 (stating that the convenience of witnesses is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora.").

Stone St. Servs, *supra* 2000 U.S. Dist. LEXIS 9027, at *9 (E.D. Pa. June 19, 2000).

102. At that time, Defendant Omnis Global Technologies, LLC was based out of an office in Santa Barbara, California. *Id*. at ¶ 16. Ms. Christian was hired by Defendants' owner Simon K. Hodson and directed to report to him throughout her tenure. *Id*. at ¶ 18. Ms. Christian interviewed for this job in Pennsylvania, and routinely supported one of Defendants' PA facilities located in West Finley, PA. Exhibit B.

<u>California operations</u>:

Omnis Global Technologies, LLC is still located in Santa Barbara, California. Exhibit B. Defendants' CFO: Randall Smith, works out of the Santa Barbara, California location and performs as the CFO for all Omnis entities. Exhibit B.

Omnis Fuel Technologies LLC owns a power plant in West Virginia, but its President Richard Hume (operating the facility) is located in Santa Barbara, California. Exhibit B. However, Omnis Fuel Technologies LLC's part owner, Tony Robbins, is a resident of Florida.

<u>Pennsylvania operations</u>:

Omnis Bailey, LLC (d/b/a Omnis Regenerative Energy) is located in Western Pennsylvania. Exhibit B. This entity operates a facility run by Keith Thompson (residing in Utah), and Charles Gassenheimer (residing in New York). Omnis Bailey, LLC is a joint venture between CONSOL Coal Resources LP (commonly referred to as CONSOL Energy) and Omnis Global Technology LLC, created in 2017 to develop a refinery to process waste coal into useable clean carbon fuel pellets. This is done at CONSOL Energy's Bailey coal mine in West Finley, PA.

<u>West Virginia Operations</u>:

Defendants have several facilities in West Virginia. This includes one facility operating for Omnis Building Technologies, LLC located in Morgantown, West Virginia (which has no more than 8-10 Omnis employees). Exhibit B. This includes a power plant operating for Omnis Fuel

Technologies, located in Pleasants County, West Virginia (there are 100s of employees at this site, but Plaintiff does not know if they are "Omnis" employees or contract employees through a different named employer/entity).  Exhibit B.  OBT Bluefield purportedly maintains a presence in West Virginia, but the building for this entity is vacant and houses no employees nor equipment. Exhibit B.  Though "located" in West Virginia, Omnis Sublimation Recovery has no physical building or warehouse facility at all.  Exhibit B.  Though Defendants may have physical operations at sites in West Virginia, Plaintiff did not interact with an of those hourly workers at those sites, and almost exclusively dealt with executive levels of management who were not situated in West Virginia (with the exception of Jonathan Hodson). *Id.*

According to Defendants' corporate disclosure statement, Hodson Investments, LLC is the parent company of Omnis Global Technologies, LLC. Omnis Global Technologies, LLC, is the parent company of Omnis Sublimation Recovery Technologies, LLC, Omnis Fuel Technologies, LLC, and Omnis Building Technologies, LLC. Omnis Building Technologies, LLC is the parent company of OBT Bluefield, LLC. Dkt. No.: 9.

Simon Hodson was not specifically assigned to work out of any of these facilities or locations, as he often traveled internationally and across the United States for his Omnis' enterprise. Exhibit B. Simon Hodson isn't even a resident of West Virginia, but rather, a resident of Santa Barabra, California.  *Id.*

In Ms. Christian's capacity as VP of Governmental Relations, Ms. Christian was expected to connect all Defendant Omnis' companies with public contacts to develop and expand Defendant's Omnis businesses.  *Id.* at ¶ 15.  In addition to supporting the PA facility (which was overseen by a NY based employee and a Utah based employee), Ms. Christian provided support to all of Omnis' enterprises, traveling to mostly Washington, D.C., West Virginia or Kentucky.

As can be gleaned from her affidavit, she spent very little time in WV, and the vast majority of her time working remotely from her home in Bucks County, PA.   Exhibit B.

Due to Defendants' financial condition in July 2021, Ms. Christian was furloughed. Ex. A at ¶ 103.  Defendants sent Ms. Christian a new offer letter on July 22, 2021, requesting she return to <u>her remote work</u> VP of Governmental Affairs position. *Id*. at ¶ 105.  The offer letter stated that Ms. Christian's salary would be $54,080 annually along with a non-discretionary bonus once they secured $10 million or more of outside funding. *Id*. at ¶ 106.  Defendants represented both in writing and orally that the non-discretionary bonus would be 110% of the difference Ms. Christian would have received under the terms of her previous employment prior to furlough ($250,000.00) and her current salary under the terms of the new employment offer ($58,080.00). *Id*. at ¶ 107. Ms. Christian induced by the bonus, accepted the offer to return to her remote VP position with Defendants. *Id*. at ¶ 108.  Defendants did indeed receive over 10 million in outside funding, but Ms. Christian never received any of the $215, 512.00 promised to her as a bonus from Defendants. *Id*. at ¶ 110.

Throughout Ms. Christian's employment with Defendant, she experienced an array of sex-based and religious-based discriminatory and harassing behavior from executives at Defendant's company while on work trips in different states and while working remotely from her home.  Ex. A at ¶ 23-54.  This behavior included comments about her appearance, pointed statements about a woman's place in the household raising children, efforts to assist grooming underage girls in grooming to be members of the church, and attempts to convert Ms. Christian to Mormonism (all the company executives and employees in decision making positions were male, Mormon, and belonged to the Mormon Church of Latter-Day Saints).  *Id.*   Despite Ms. Christian's protests, her male colleagues persisted with sexist comments, aggressive religiously charged discriminatory

7

statements and treatment, and simply isolating behavior toward her up until her termination with Omnis. *Id.* When Ms. Christian reported the behavior to Matthew Hart, VP of HR, and member of the Mormon LDS church, he said he found nothing wrong with the behavior and also believed in the teachings of the church. *Id.* at ¶ 36.

Between June through August 2023, in preparation of impending meetings with government officials, Ms. Christian began asking Mr. Hodson about discrepancies in Defendants' companies financial documents. Ex. A at ¶ 59. Ms. Christian expressed concerns about Defendants' misrepresentation of their financial situation because she was tasked with explaining their finances to government officials in her day-to-day duties of securing government funding, contracts, and support. Ex. A at ¶ 61. When questioned by Ms. Christian, Mr. Hodson responded that she "whines a lot." *Id.* at ¶ 62. Ms. Christian sought further clarification of the financial documents from Charles Gassenheimer, an employee of Omnis Bailey, LLC and Omnis Regenerative, LLC, regarding her concerns about the financing and validity of statements Hodson was making to state and federal government officials. Ex. A at ¶ 63. Mr. Gassenheimer further berated Ms. Christian and told her no one would listen to her or take her concerns seriously because she was not a part of the Latter-Day Saints Church. *Id.* at ¶ 64.

During an August 30, 2023, hours long in person conversation, Ms. Christian confronted Mr. Hodson about the false financial representations he was making to government officials. Ex. A at ¶ 65. Ms. Christian openly objected to Mr. Hodson's ongoing efforts to defraud governmental officials for company investments. *Id.* Further, Ms. Christian made clear that she would not lie on Mr. Hodson's or Defendants' behalf. Id. at ¶ 66. In an attempt to manipulate Ms. Christian and minimize her concerns, Mr. Hodson inappropriately made an advance toward her saying "hold my hands and look into my eyes and tell me you believe me" to which Ms. Christian responded

immediately "don't touch me". *Id*. at ¶ ¶ 68, 69.  Mr. Hodson responded to Ms. Christian's rejection by telling her she "should go." *Id.* at ¶ 69.

On or about September 5, 2023, with the knowledge that Ms. Christian had upcoming meetings with government officials about Defendants' financial documents and actual financial situation, Mr. Hodson texted her with details about a new proposed job focus.  Ex. A at ¶ ¶ 65, 71.  The new job duties included ceasing her work with Defendant Omnis Global Technologies, LLC and switching to work directly with OBT Bluefield under Simon Hodson's son Jonathon Hodson, continuing to leverage Ms. Christian's government contacts to develop a manufacturing plant in Bluefield.  *Id.* at ¶ 71-73.  The following day, on September 6, 2023, Ms. Christian sent an email to Mr. Hodson summarizing her disdain for the "unbearable" mistreatment she had experienced working for Defendants' thus far, and specifically her disdain for his inappropriate actions toward her during their in-person August 30, 2023, encounter.  *Id.* at ¶ 74.  Days later, on September 9, 2023, Ms. Christian received an email from Defendants' general counsel Blake Stephens instructing her to "immediately cease and desist all work for any of the Omnis companies.".  *Id.* at ¶ 75.  Stephens hails from Pennsylvania and resides there.  Exhibit B.

On September 10, 2023, Stephen's threatened Ms. Christian by stating "Please be very careful about how you move forward here Michelle." *Id.* at ¶ 76.  Since the filing of an EEOC Charge over the aforementioned facts, Defendants then filed a separate civil action against Ms. Christian in Bucks County Court of Common Pleas seeking the return of her laptop computer, claiming it was their company property, and purposely availing themselves to a Pennsylvania Court in a legal dispute with Ms. Christian.  *See* Exhibit C.

### III. LEGAL ANALYSIS

#### A. Legal Standard for Considering Proper Venue & What a Court May Consider on a Motion to Transfer Venue

Ultimately, the burden of establishing improper venue is on the Defendant. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725, 19 V.I. 642 (3d Cir. 1981) ("the defendant should ordinarily bear the burden of showing improper venue"); *see Baptiste v. Tapestry, Inc.*, 2018 U.S. Dist. LEXIS 134467, 2018 WL 3772678 (D.N.J. 2018); *see also Reitnour v. Cochran*, 86-4869, 1987 U.S. Dist. LEXIS 3098, 1987 WL 9774, at *1 n.1 (E.D. Pa. 1987) (holding that the defendant, as the movant, bears burden of proving improper venue).

A Court accepts the facts bearing on venue in the complaint as true unless the defendants introduce affidavits or declarations that demonstrate venue is not proper. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (citing *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1990)); *Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) (explaining declarations complying with 28 U.S.C. § 1746 are deemed equivalent to affidavits); *cf. Myers v. Am. Dental Ass'n*, 695 F.2d 716, 723, 19 V.I. 642 (3d Cir. 1982) (referencing defendants' affidavits in concluding that venue was improper). If the defendant's evidence shows that venue is not proper, the plaintiff must rebut the evidence. *See Bockman*, 459 F. App'x at 162 (holding venue was improper because plaintiffs failed to rebut defendants' affidavit evidence).

### B. Venue is Proper Here under Title VII's Exclusive Venue Provision as Plaintiff Worked in this Judicial District and Felt the Effects of Defendants' Illegal Discriminatory Actions Here

Title VII contains a provision strictly limiting venue for civil rights actions,[7] setting forth four judicial districts where an employment discrimination action may be brought:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought (1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought (4) within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.
> 42 U.S.C. § 2000e-5(f)(3) (1994).

By way of this provision, "Congress clearly intended to limit venue to the judicial districts concerned with the alleged discrimination." *Kravitz v. Institute for Intern. Research, Inc.*, 1993 U.S. Dist. LEXIS 15669, Civ. A. No. 92-5045, 1993 WL 453457, *2 (E.D. Pa. Nov. 5, 1993). For employment discrimination cases, the Title VII venue provisions are exclusive. *Id*. (citing *Thurmon v. Martin Marietta Data Systems*, 596 F. Supp. 367, 368 (M.D. Pa. 1984).

Ms. Christian properly filed suit in this District Court pursuant to Title VII's venue provision. Ms. Christian meets prong one (1) and (3) of Title VII's Venue provision because she would have worked here but for the unlawful termination, and is the venue in which the unlawful employment practices are alleged to have been committed.

---

[7] "Title VII contains its own venue provision." *Sandler v. Donley*, No. 09-06257, 2011 U.S. Dist. LEXIS 61190, 2011 WL 2293327, at *2 (D.N.J. June 8, 2011) (citing 42 U.S.C. § 2000e-5(f)(3)). "Title VII's venue provision is 'mandatory and well-settled, thereby rendering other general venue statutes inapplicable.'" *Id*. (*quoting Vincent v. Woods Servs.*, No. 08-01007, 2008 U.S. Dist. LEXIS 27781, 2008 WL 939190, at *1 (D.N.J. Apr. 4, 2008)).

11

Defendants' brief argues that the discriminatory practice is "committed" where the "bad actor does the (alleged) bad act" but does not support this assertion with relevant case law or statutory language.  Here, Defendants argue that the discrimination Ms. Christian faced while working as a remote employee in Pennsylvania does not avail Ms. Christian to a Pennsylvania Court because the alleged bad actors were in West Virginia at the time they committed the alleged illegal actions. (There is no proof of this via affidavit or other evidence, mere bald assertions). Other Courts have considered this issue and determined that venue is proper if a Plaintiff is a remote worker in Pennsylvania bringing a Title VII claim against an employer headquartered in another state, if the implementation and impact are felt in Pennsylvania.  *See Dean v. HandySoft Corp., No. 04-5387, 2005 U.S. Dist. LEXIS 2127*, at *5-7 (E.D. Pa. Feb. 16, 2005); *see also*, *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 505-06 (3d Cir. 2000) (discussing the fact that allowing employees to work from home offices creates additional proper venues in Title VII actions).

*Dean* is dispositive to Defendants' present argument, as the plaintiff in *Dean* filed suit under Title VII and the PHRA for allegations of race discrimination. Although *Dean*'s employer was headquartered in Virginia, *Dean* was permitted to work from his home in PA, and the District Court rejected the same arguments presented here:

> HandySoft argues that Dean worked out of and reported to its Vienna, Virginia, headquarters; that all decisions relating to the termination of Dean's employment were made in and communicated [*6] from Virginia; that all records pertaining to the termination of Dean's employment are maintained in Virginia; and that but for his termination, Dean would have continued to work out of and report to HandySoft's Virginia headquarters. They argue that because all of Dean's employment activities took place in Virginia, the only possible venue would be in Virginia.
>
> I am unable to join HandySoft in its conclusion that because Dean telecommuted to Virginia, his only place of employment was in Virginia. HandySoft has cited no case law supporting this proposition. In fact, it has been held that venue is

12

> appropriate in both the forum in which the employment decision is made and the forum in which that decision is implemented or its effects are felt. See Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 505-06 (3d Cir. 2000) (discussing the fact that allowing employees to work from home offices creates additional proper venues in Title VII actions). In this case, Dean worked from his home in West Chester, Pennsylvania, servicing HandySoft clients in Pennsylvania and New Jersey. Dean would have continued working from his home had he not been terminated. As a result, [*7] venue for the Title VII claim is proper in this District as a district in which the aggrieved person would have worked but for the alleged acts of discrimination. Lomanno v. Black, 285 F. Supp. 2d 637, 641 (E.D. Pa. 2003).

*Dean v. HandySoft Corp.*, No. 04-5387, 2005 U.S. Dist. LEXIS 2127, at *5-7 (E.D. Pa. Feb. 16, 2005)(J. Kelly); *and see Hale v. Iancu*, No. 19-cv-1963, 2021 WL 9405460, at *1-3, 2021 U.S. Dist. LEXIS 37058, at *1-10 (D. Conn. Feb. 23, 2021) (finding venue for Title VII action proper in state where Plaintiff was working remotely when adverse employment action was taken against him and where he averred that he would have worked but for the adverse employment action); *and see Beaver v. Healthineers*, No. 5:22-cv-00172-GFVT, 2024 U.S. Dist. LEXIS 56184, at *7 (E.D. Ky. Mar. 28, 2024)(where Plaintiff worked for Siemens "as a remote employee," and "alleged Title VII violation occurred while she was living in Michigan, and that she would have continued working in Michigan 'but for' the alleged Title VII violation," venue was proper in Michigan). This District is both where Ms. Christian worked – and where she felt the effects of Defendants' unlawful employment practices. Venue is proper here.

### C. Defendants' Alternative Request to Transfer Venue Pursuant to 28 U.S.C. 1404(a) Should be Rejected

Given that venue is already proper in the Eastern District of Pennsylvania, Defendants alternatively seek transfer pursuant 28 U.S.C. 1404(a), which states in pertinent part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." However, the party seeking to transfer must show that the alternative venue is not only adequate, but also more convenient

13

than the current one. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995; *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 U.S. Dist. LEXIS 87645, Copy. L. Rep. (CCH) P29,656, 2008 WL 4755350 (D.N.J. 2008).

In the Third Circuit, the plaintiff's choice of venue is a "paramount consideration" and should not be lightly disturbed. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S. Ct. 871, 27 L. Ed. 2d 808 (1971). As the moving party in this case, the defendants have the burden of persuasion on their motion to transfer. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). To overcome the presumption in favor of the plaintiff's choice of forum, the defendant must produce "something more than a mere preponderance of the evidence" in favor of transfer. *Kisko v. Penn Central Transp. Co.*, 408 F. Supp. 984, 986 (M.D.Pa. 1976).

**i.)      Private Interest Factors Favor the Eastern District**

Pursuant to § 1404(a), the private interest factors for a Court's consideration include (1) the parties' forum preferences; (2) where the claim arose[8]; (3) convenience of the parties and witnesses; and (4) location of evidence. *See Spack v. Trans World Entm't Corp.*, No. 3:17-cv-2687(BRM)(LHG), 2017 WL 6209218, at *3 (D.N.J. Dec. 8, 2017).

The remaining private interest factors to consider are (3) and (4). While Defendants submit an affidavit outlining that some of their supporting witnesses are purportedly located in West Virginia, and their physical documents pertaining to the matter are in West Virginia – these factors do not weigh in their favor. Ms. Christian has her own no less important witnesses that reside in Pennsylvania supporting her claims and showing the impact of the incidents on her mental and physical health for the purposes of determining actual harm and damages. Separately, the potential

---

[8] Addressed ad nauseam *supra*.

witnesses in this case are *not* central to West Virginia, with the exception of Simon Hodson's brother: Jonathan. Otherwise, most of the executives Ms. Christian was dealing with were visiting the PA coal site, or located all over the United States. Exhibit B.

In essence, Defendants contend that the litigation of the matter in West Virginia will be more convenient for *their* witnesses. However, "[a] court will not grant a transfer simply because the transferee court is more convenient for the defendants . . .. If the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed." *Market Transition Facility v. Twena*, 941 F. Supp. 462, 467 (D.N.J. 1996) (quoting *Ballard Medical Products v. Concord Laboratories, Inc.*, 700 F. Supp. 796, 801 (D.Del. 1988)). Courts have also held that "the inconvenience of employees or agents of the parties does not weigh as heavily as inconvenience to non-party witnesses." *Hale v. Iancu*, 2021 U.S. Dist. LEXIS 37058, at *16 (D. Conn. Feb. 23, 2021) *citing Pecorino v. Vutec Corp.,* 934 F. Supp. 2d 422, 437 (E.D.N.Y. 2012) (citing *Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F. Supp. 2d 356, 364 (E.D.N.Y. 2009)). This is of central import to consideration of Ms. Christian's treating physicians who are located here.

West Virginia is not across the Country and the few witnesses who actually reside and work of West Virginia, which appear to be **two** (*see* Exhibit B), can easily appear in this District. *See Calkins citing See, e.g., Bevil v. Smit America*, 883 F. Supp. 168, 170 (S.D.Tex. 1995) (denying motion to transfer to courthouse 50 miles away because of minimal inconvenience "in this age of convenient travel, discovery, trial testimony preservation, and communication"); *Market Transition*, 941 F. Supp. at 468 (denying motion to transfer from Newark to Brooklyn); *Standard v. Stoll Packing Corp.*, 210 F. Supp. 749, 750 (M.D.Pa. 1962) (denying motion to transfer, considering the proximity of Pittsburgh and Harrisburg).

More importantly, the Omni Defendants maintain a presence in Pennsylvania (operating a functional facility in Western PA)(Ex. B), their jobs here have previously brought them to this state (Ex. B), they are *currently litigating with Ms. Christian in this state in Bucks County* (Ex. C), and the defendants do not assert that litigating before this court would impose any physical or financial hardship. Further, the Ominis Defendants have not alleged that they would be unable to receive a fair trial in Pennsylvania or that any "practical problems" exist that dictate transfer. Finally, the inconvenience to Ms. Christians' Bucks County, Pennsylvania based non-party witnesses (therapist and medical doctors listed in Exhibit B affidavit) compared to the inconvenience of travel for Defendants' party witnesses, is paramount to the decision not to transfer venue.

Similarly, the location of documents does not weigh in favor of transfer, given the era in which we live. The location of physical documents is no longer a factor given great weight in a Section 1404(a) analysis. *See, e.g., Oubre v. Clinical Supplies Mgmt., Inc*., 05 Civ. 2062, 2005 U.S. Dist. LEXIS 28877, 2005 WL 3077654, at *3 (S.D.N.Y. Nov. 17, 2005) (In today's era of photocopying, fax machines, Federal Express, and electronic document transmission, the location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer.") (quotations omitted); *Lynch v. Nat'l Prescription Adm'rs*, 03 Civ. 1303, 2004 U.S. Dist. LEXIS 3134, 2004 WL 385156, at *3 (S.D.N.Y. Mar. 1, 2004) ("[T]he location of documents factor is neutral [in] today's era of photocopying, fax machines and Federal Express.") (quotations omitted). Here, Defendants' have not shown any burden in exchanging documents in this case via electronic means.

16

### ii.) Public Interest Factors favor the Eastern District

Courts also consider public interest factors when deciding a motion to Transfer Venue. Public interest factors include the following: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home and the public policies of the fora; and (5) the familiarity of the trial judge with any applicable state law." *Jumara*, 55 F.3d at 879-80.

Defendants concede that the first, third, and fifth factors are not at issue. Def. Motion to Transfer, at p 7. As explained above, while Defendants' business address is in the Northern District of West Virginia, the potential witnesses Ms. Christian names in her affidavit are located all throughout the country. See Exhibit B. The three (3) witnesses that defendant names are all high-level executives that are already accustomed to travel for work, can afford such travel, and would not be heavily burdened by showing up to court in Pennsylvania for litigation.

Ms. Christian is currently unemployed and could not easily afford traveling to litigate in Northern West Virginia. *Id.* Further, the non-party witnesses Ms. Christian named in her affidavit would need to bear the cost and time of travel which would not make the trial easy, expeditious or inexpensive. Lastly, Defendants suggest that West Virginia has a greater interest in the underlying controversy because the unlawful acts took place there. But Ms. Christian contends that the illegal acts occurred in Pennsylvania and across multiple states, not just West Virginia, and a majority occurred while she was teleworking from her Pennsylvania, Bucks County home. *Id*. Therefore, public interest factors support this court retaining jurisdiction.

## IV.     CONCLUSION

Defendants have not met their burden to show that it would be more fair or convenient to transfer venue of this civil rights action to West Virginia.  In fact, Ms. Christian has shown that transferring venue to West Virginia would substantially burden herself and her Pennsylvania based witnesses.  Defendant companies have more resources available and are accustomed to travel to Pennsylvania for work related issues, as well as current litigation they have here with Ms. Christian.

                                      Respectfully Submitted,

                                      **KARPF, KARPF & CERUTTI, P.C.**

                                      */s/ Christine E. Burke* _____
                                      Christine E. Burke, Esq.
                                      8 Interplex Drive
                                      Suite 210
                                      Feasterville-Trevose, PA 19053
                                      Attorney for Plaintiff

Date: June 11, 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE CHRISTIAN : <br> : <br> Plaintiff, : <br> : Civil Action No.: 2:24-cv-01319 <br> v. : <br> : <br> OMNIS GLOBAL TECHNOLOGIES, LLC : <br> and : <br> OMNIS BUILDING TECHNOLOGIES, LLC : <br> and : <br> OBT BLUEFIELD, LLC : <br> and : <br> OMNIS FUEL TECHNOLOGIES LLC : <br> d/b/a OMNIGEN : <br> and : <br> OMNIS SUBLIMATION RECOVERY : <br> TECHNOLOGIES, LLC : <br> : <br> Defendants. : <br> : | |

## CERTIFICATION OF SERVICE

I certify on the date set forth below that I served Defendant with a copy of Plaintiff's Response Brief to Defendants' Motion to Transfer Venue at the following address via ECF:

Matthew J. Hank, mhank@littler.com
Alexa J. Laborda Nelson, alabordanelson@littler.com
Haley R. Norwillo, hnorwillo@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street
Suite 1400
Philadelphia, PA 19102

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*_____
Christine E. Burke, Esq.

Dated: June 11, 2024

19