# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE CHRISTIAN : <br> : <br> Plaintiff, : <br> : Civil Action No.: 2:24-cv-01319 <br> v. : <br> : <br> OMNIS GLOBAL TECHNOLOGIES, LLC : <br> and : <br> OMNIS BUILDING TECHNOLOGIES, LLC : <br> and : <br> OBT BLUEFIELD, LLC : <br> and : <br> OMNIS FUEL TECHNOLOGIES LLC : <br> d/b/a OMNIGEN : <br> and : <br> OMNIS SUBLIMATION RECOVERY : <br> TECHNOLOGIES, LLC : <br> : <br> Defendants. : <br> : | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Michelle Christian ("Ms. Christian") by and through her undersigned counsel, hereby responds as follows to Defendants' Motion to Dismiss and relies upon the Brief attached hereto in support of her Response.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*
Christine E. Burke, Esq.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
Attorneys for Plaintiff

Date: June 11, 2024

I. **INTRODUCTION/PROCEDURAL BACKGROUND**

On March 28, 2024, Ms. Christian filed a Complaint against her prior joint/integrated employers: Omnis Global Technologies, LLC, Omnis Building Technologies, LLC, OBT Bluefield, LLC, Omnis Fuel Technologies, LLC d/b/a/ Omnigen, and Omnis Sublimation Recovery Technologies, LLC. (*hereinafter* collectively referred to as "Defendants"). *See* Exhibit A. Ms. Christian asserted therein that she was unlawfully terminated in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq*.),[1] the False Claims Act (31 U.S.C. § 3730(h)(1)), and raised failure to pay certain bonuses promised, sounding in claims for unjust enrichment, breach of contract, promissory estoppel and the Pennsylvania Wage Payment and Collection Law ("WPCL")(43 Pa. Stat. Ann. § 260.9). *Id.*

On May 28, 2024, Defendants filed the current Motion to Dismiss, and a separate Motion to Transfer Venue. Dkt. Nos.:10-1, 11-1, respectively. Defendants include a short argument about improper venue in the current Motion, but since a separate Motion to Transfer Venue was filed (Dkt. No.: 11-1), Plaintiff has responded separately to that Motion. Defendants now move to dismiss Ms. Christian's Complaint under Federal Rule of Civil Procedure 12(b)(6).

First, Defendants argue that Ms. Christian fails to delineate specific blame for asserted material actions specific to each Omnis entity. However, Ms. Christian has properly plead that the Omnis entities as named (and perhaps several others to be borne out further in discovery) all operated as one enterprise and exhibited significant control over her throughout her employment with Defendants – as she was hired to work for and on behalf of *all* of Simon Hodson's Omnis' entities (no matter who the paymaster may have been on her W2 or offer letter). At this stage in litigation, such delineation as to whether or not each entity is properly named as a joint or

---

[1] And noticed her intent to pursue mirroring violations of state law under the Pennsylvania Human Relations Act ("PHRA")

1

integrated employer is premature. As discussed *infra*, as Ms. Christian has properly plead the existence of a joint/integrated employer, and she need not make allegations specific each individual business entity.

Second, Defendants argue that Ms. Christian fails to state a claim of retaliation under the False Claims Act ("FCA"). Defendants' brief describes the requirements for stating such a claim but ignores all the material facts Ms. Christian pled to support her FCA claim. To state a claim of retaliation under the FCA, a plaintiff must plead enough facts to plausibly suggest she had an objectively reasonable belief the employer made, or was about to make, a false claim to cause the government to pay money.

Ms. Christian specifically alleges that she confronted Defendants' owner: Simon Hodson several times about clear misrepresentations and discrepancies in Defendants' financial statements. Ex. A at ¶ ¶ 59-66. After some investigation into the financials, Ms. Christian confronted Mr. Hodson and made clear that she thought he intended to perpetrate a fraud on the government to secure funding and she would not assist in perpetrating such false claims. *Id.* Ms. Christian also asserts that Hodson knew she had upcoming meetings with government officials regarding securing government funding and that she pointedly told Defendants' owner Hodson that she would not assist him in his fraud or support his misrepresentations to these government officials. Ex. ECF at ¶ 67. Ms. Christian also told Mr. Hodson she would report his misrepresentations to the government. *Id.*[2]

Defendants' brief also ignores the follow up conversation with Mr. Gassenheimer where

---

[2] Hodson obviously has some real concerns about Ms. Christian's ability to substantiate this fraud, as he immediately brought a separate civil against Ms. Christian in the Commonwealth of Pennsylvania after her termination to recover her personal laptop and all of its contents, and made separate threats to pursue purported trade secret violations, to deter her from preserving and sharing their fraudulent documents created to secure government funding. Ex. C at ¶ 78.

he tells Ms. Christian she will get nowhere, and no one will ever listen to or believe her when she inquired about the Defendants' financials and fraudulent efforts to secure governmental support and funding. Ex. ECF at ¶ 63-64. Ms. Christian need not show that Defendants received or made a claim for governmental funds but that they intended to make such a claim. Ms. Christian pled facts that support Defendants intended to make a fraudulent claim to the government to secure contracts and funding, which she threatened to report. These facts, as plead, are more than sufficient to proceed with discovery on this claim.

Lastly, Defendants argue that Ms. Christian failed to show a connection between her termination and her "protected actions" as required by the FCA. As Defendants well know – causation is a fact sensitive issue, and not an evidentiary burden at the pleading stage. Ms. Christian asserted facts related to contentious conversations with management about Defendants' questionable financial documents (June through August 30, 2023), her pointed accusation that Defendants were attempting to present doctored financial statements to obtain future government funding, and her intentions to report the misrepresentations to the government in impending meetings. The timing between her termination (September 9, 2023) contextualized with her August 30, 2023, conversation about financial misrepresentations show that her termination was plausibly motivated by her inquiries into Defendants' fraudulent representations and intention to submit such representations in the coming weeks to secure government funding. These facts suggesting animosity and suggestive timing, as plead, are more than sufficient to proceed with discovery on this claim.

## II.    FACTUAL BACKGROUND

Ms. Christian is a Pennsylvania resident, who resides in this District. Exhibit A attached hereto at ¶ 8. At all times, Ms. Christian worked remotely at her home address for Defendants.

*Id.* at ¶ 16.  Defendants' "Omnis" businesses were incorporated in Delaware and share a primary business address at 3710 Collins Ferry Road, Morgantown, West Virginia 26505.  *Id.* at ¶ 9.

Ms. Christian was hired by Defendant Omnis Global Technologies, LLC on November 16, 2020, as its Vice President of Government Relations, with an annual salary of $250,000.  *Id.* at ¶¶ 14, 102.  At that time, Defendant Omnis Global Technologies, LLC was based out of Santa, Barbara California and Ms. Christian was hired to work from her home in Bucks County PA, and travel when needed.  *Id*. at ¶ 16.  Ms. Christian was hired by Defendants' owner Simon K. Hodson and directed to report to him throughout her tenure.  *Id*. at ¶ 18.

Eventually Defendant Omnis companies became based out of the West Virginia address mentioned above.  *Id.* at ¶ 17.  In her capacity as VP of Governmental Relations, Ms. Christian was expected to connect **all** Defendant Omnis companies with public contacts to develop and expand Defendant's Omnis businesses.  *Id*. at ¶ 15.  Throughout her tenure, Ms. Christian's salary was direct deposited from different Omnis business accounts showing the comingling of funds and operations between all Defendants' Omnis businesses.  *Id*. at ¶ 14 footnote 2.

Due to Defendants' financial condition in July 2021, Ms. Christian was furloughed.  *Id.* at ¶ 103.  Defendants sent Ms. Christian a new offer letter on July 22, 2021, requesting she return to her remote work VP of Governmental Affairs position.  *Id*. at ¶ 105.  The offer letter stated that Ms. Christian's salary would be $54,080 annually along with a non-discretionary bonus once they secured $10 million or more of outside funding.  *Id*. at ¶ 106.  Defendants represented both in writing and orally that the non-discretionary bonus would be 110% of the difference Ms. Christian would have received under the terms of her previous employment prior to furlough ($250,000.00) and her current salary under the terms of the new employment offer ($58,080.00).  *Id*. at ¶ 107.  Ms. Christian induced by the bonus, accepted the offer to return to her remote VP position with

Defendants.  *Id*. at ¶ 108.  Defendants did indeed receive over 10 million in outside funding, but Ms. Christian never received any of the $215, 512.00 promised to her as a bonus from Defendants. *Id*. at ¶ 110.

Throughout Ms. Christian's employment with Defendant, she experienced an array of sex-based and religious-based discriminatory and harassing behavior from executives within Defendants company while on work trips in different states and while working remotely from her home.  *Id.* at ¶¶ 23-53.  This behavior included comments about her appearance, pointed statements about a woman's place in the household raising children, grooming young women to become members of the Latter-Day Saints, and attempts to convert Ms. Christian to Mormonism (all the company executives and employees in decision making positions were male, Mormon, and belonged to the Mormon Church of Latter-Day Saints).  *Id.*  Despite Ms. Christian's protests, her male colleagues persisted with sexist comments, aggressive religiously charged discriminatory statements and treatment, and simply isolating behavior toward her up until her termination with Omis.  *Id.*  When Ms. Christian reported the behavior to Mathew Hart, VP of HR, a member of the Mormon LDS church, he said he found nothing wrong with the behavior and also believed in the teachings of the church.  *Id*. at ¶ 36.

Between June through August 2023, in preparation of impending meetings with government officials, Ms. Christian began asking Mr. Hodson about discrepancies in Defendants' companies financial documents.  *Id.* at ¶ 59.  Ms. Christian expressed concerns about Defendants' misrepresentation of their financial situation because she was tasked with explaining their finances to government officials in her day-to-day duties of securing government funding, contracts, and support.  *Id.* at ¶ 61.  When questioned by Ms. Christian, Mr. Hodson responded that she "whines a lot."  *Id*. at ¶ 62. Ms. Christian sought further clarification of the financial documents from

5

Charles Gassenheimer, an employee of Omnis Bailey, LLC and Omnis Regenerative, LLC, regarding her concerns about the financing and validity of statements Hodson was making to state and federal government officials. *Id.* at ¶ 63. Mr. Gassenheimer tried to deter her from delving into the issue further – and told her no one would listen to her or take her concerns seriously because she was not a part of the Latter-Day Saints Church. *Id.* at ¶ 64.

During an August 30, 2023, hours long in person conversation, Ms. Christian confronted Mr. Hodson about the false financial representations he was making to government officials. *Id.* at ¶ 65. Ms. Christian openly objected to Mr. Hodson's ongoing efforts to defraud governmental officials for company investments. *Id.* Further, Ms. Christian made clear that she would not lie on Mr. Hodson or Defendants' behalf. Id. at ¶ 66. In an attempt to manipulate Ms. Christian and minimize her concerns, Mr. Hodson inappropriately made an advance toward her saying "hold my hands and look into my eyes and tell me you believe me" to which Ms. Christian responded immediately "don't touch me." *Id*. at ¶¶ 68, 69. Mr. Hodson responded to Ms. Christian's rejection by telling her she "should go." *Id.* at ¶ 69.

On or about September 5, 2023, with the knowledge that Ms. Christian had upcoming meetings with government officials about Defendants' financial documents and actual financial situation, Mr. Hodson texted her with details about a new proposed job focus. *Id.* at ¶¶ 65, 71. The new job duties included ceasing her work with Defendant Omnis Global Technologies, LLC and switching to work directly with OBT Bluefield under Simon Hodson's son Jonathon Hodson, continuing to leverage Ms. Christian's government contacts to develop a manufacturing plant. *Id.* at ¶¶ 71-73. The following day, on September 6, 2023, Ms. Christian sent an email to Mr. Hodson summarizing her disdain for the "unbearable" mistreatment she had experienced working for Defendants' thus far, and specifically her disdain for his inappropriate actions toward her during

their in-person August 30, 2023, encounter. *Id.* at ¶ 74. Days later, on September 9, 2023, Ms. Christian received an email from Defendants' general counsel Blake Stephens instructing her to "immediately cease and desist all work for any of the Omnis companies.". *Id.* at ¶ 75.

On September 10, 2023, Stephens threatened Ms. Christian by stating "Please be very careful about how you move forward here Michelle." *Id.* at ¶ 76. Since then, presumably concerned with Ms. Christian's whistle-blowing activities, Defendants filed a separate civil action against Ms. Christian in Bucks County Court of Common Pleas to recover the laptop and all of its contents. *Id.* at ¶ 78.

### III. LEGAL ANALYSIS

#### A. Standard of Review

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), a court is required to "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 375 n. 7 (3d Cir. 2002)). In a complaint, a district court is supposed to accept not only all allegations as true but all inferences arising from the allegations as true. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

Since *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the pleading standard has changed slightly. The Third Circuit has revisited the pleading standard since Twombly and has determined that "under our reading [of Twombly], the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a

showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Phillips, 515 F.3d at 233 (internal citations omitted). Put simply, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up as follows: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This instead imposes a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234 (internal citations removed).

In employment discrimination cases, the Supreme Court of the United States has previously held that a plaintiff is not required to establish a prima facie case at the pleadings stage. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)(emphasis added)("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). While there is some question as to the applicability of *Swierkiewicz* post *Twombly and Iqbal, see Fowler*, 578 F.3d at 211-13, the United States Court of Appeals for the Third Circuit has noted that "the quantum of facts that a discrimination complaint should contain" continues to be a question ripe for further development. See *Guirguis v. Movers Specialty Servs.,* 346 F. App'x 774, 776 n.6 (3d Cir. 2009). A District of New Jersey Court has stated, "[r]econciling Swierkiewicz, Twombly, and Iqbal, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Huggard v. Crown Bank*, 2012 U.S. Dist. LEXIS 20501 *11 (D.N.J. Feb. 17, 2012); *Barbosa v. Continuum Health Partners Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010).

Despite Defendants' suggestion that a plaintiff is required to prove her entire case within her Complaint, the law clearly does not require a plaintiff to do so. Once again, a plaintiff's Complaint

need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Ms. Christian has more than sufficiently pled enough facts which could give rise to an inference that Defendants committed FCA violations, and were acting as "joint" or "integrated" employers at all times relevant to the Complaint.

**B. Ms. Christian has properly plead a violation of the False Claims Act**

Section 3730(h)(1) of the FCA provides:

> "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

Congress amended whistleblower protections in 2010, expressly protecting "lawful" acts "in furtherance of" either "an action" under the FCA or "other efforts to stop 1 or more violations of" the Act. 31 U.S.C. § 3730(h)(1); *see, e.g.*, *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 765 (10th Cir. 2019) (adopting these two amendments to the Act). The legislative history confirms the change was made to "protect[] not only steps taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy the misconduct . . . whether or not such steps are clearly in furtherance of a potential or actual qui tam action." 155 Cong. Rec. E1295-03, E1300 (June 3, 2009) (statement of Rep. Berman).

To plead retaliation under the FCA, it is no longer solely required that an employer be on notice that a plaintiff is contemplating FCA litigation. *See, e.g., Singletary v. Howard Univ.,* 939 F.3d 287, 296, 444 U.S. App. D.C. 1 (D.C. Cir. 2019) (explaining that the newly added language "is not tied to the prospect of a False Claims Act proceeding" and instead "focuses on the whistle-blower's efforts to stop violations of the statute before they happen") (internal quotations

9

omitted).1 The events giving rise to this litigation took place against this statutory backdrop. *United States ex rel. Ascolese v. Shoemaker Constr. Co.,* 55 F.4th 188, 191 (3d Cir. 2022)

To state a claim of retaliatory discharge in violation of the FCA a plaintiff must allege two elements: (1) that he [or she] engaged in protected conduct, and (2) that he [or she] was discriminated against because of his [or her] protected conduct. *DiFiore v. CSL Behring, LLC,* 879 F.3d 71, 76 (3d Cir. 2018). The second element requires a plaintiff to assert that his or her "employer had knowledge that he [or she] was engaged in 'protected conduct' and that the employer retaliated against him [or her] because of that conduct." *United States ex rel. Carroll v. Hackensack Meridian Pascack Valley Med. Ctr.,* No. 21-18104 (SDW) (ESK), 2023 U.S. Dist. LEXIS 223862, at *1 (D.N.J. 2023) (quoting *Hutchins v. Wilentz*, 253 F.3d 188 (3d Cir. 2001)). There are two types of "protected conduct" under the FCA: (1) "lawful acts done . . . in furtherance of" an FCA action; and (2) "other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1); *See Hall v. Abington Mem'l Hosp.,* No. 22-2429, 2023 U.S. Dist. LEXIS 170044, at 8-9 (E.D. Pa. 2023).

"Protected conduct" is defined as that activity that reasonably could lead to a viable FCA action. *See McKenzie v. Bellsouth Telecomms., Inc*., 219 F.3d 508, 516 (6th Cir. 2000) (citation omitted). A plaintiff "need not use formal words of 'illegality' or 'fraud." An employee need not have actual knowledge of the FCA for her actions to be considered "protected activity" under § 3730(h). If so, only those with sophisticated legal knowledge would be protected by the statute. *United States ex rel. Yesudian v. Howard Univ.,* 332 U.S. App. D.C. 56, 153 F.3d 731, 741 (D.C. Cir. 1998)(". . . only [lawyers] would know from the outset that what they were investigating could lead to a False Claims Act prosecution.").

A plaintiff's pleading under the second prong for "protected conduct" must plead facts plausibly suggesting "that some nexus exists between their actions and the prevention of an actual

10

or potential violation of the FCA." *Hall*, 2023 LEXIS 170044, at 11. They must also plead facts plausibly suggesting their belief about the employer's actual or impending FCA violation was "objectively reasonable." *Id.* The employer need not have already made the false claim to the government to induce payment. *Chowns Group, LLC v. John C. Gimberg Co.,* Civ. Action No. 22-2238, 2024 WL 375824, at *9 (E.D. Pa. Jan. 20, 2024).

### i. Plaintiff pled ample facts to plausibly suggest that she engaged in protected conduct under the FCA

Defendants argue that Ms. Christian did not plead facts sufficient to plausibly suggest she engaged in "protected conduct" under the FCA. This is simply untrue. Defendants cite Ms. Christian's pleadings regarding her initial confusion about the companies' financial statements not adding up to support that she does not meet the first FCA prong. (MTD p 6 ¶ 1.) But Defendant fails to acknowledge Ms. Christian's actions following her due diligence investigation, and concluded that Defendants were misrepresenting their financials, and confronted owner Simon Hodson. Ex. A at ¶ 59-62.

Furthermore, Ms. Christian contacted another employee Mr. Gassenheimer on June 28, 2024, to express her concerns about Defendants' financial misrepresentations. Ex. A at ¶¶ 91-93. During this conversation, Mr. Gassenheimer informed Ms. Christian that she will get nowhere with her allegations, and no one will listen to her or take her seriously because she is not part of the LDS Mormon Church. *Id.* On August 30, 2023, Ms. Christian proceeded to confront Mr. Hodson for the last time about false statements he was making to state and federal government officials to induce them to provide funding, and her intentions to report his fraud to the government. Ex. A at ¶ 93. Her complaint also includes facts showing that Defendants were aware of her impending meetings with government officials in the coming weeks to discuss funding and contracts for Omnis. Based on these facts, Ms. Christian did indeed engage in protected conduct under the FCA

and meets prong one.

### ii. A plaintiff need not show "but for" causation at the Motion to Dismiss stage

Defendants argue that Ms. Christian's FCA claim should be dismissed because she did not plead facts sufficient to establish "but for" causation. Defendants are infusing a trial burden at the pleading stage. Their citation to *DiFiore* only enforces this point, as this was a decision issued by the Third Circuit after trial and as to the jury instructions provided on the FCA retaliation claim. While Ms. Christian will bear her burden of proof at trial, she is not required to show but-for causation at the pleading stage.

While Ms. Christian is not required to show "but for" causation at the Motion to Dismiss stage, she nonetheless has pled facts sufficient to show that her termination would not have occurred "but for" her "protected actions" evidenced by the timeline of her actions and discharge from Defendants' companies. Ms. Christian was terminated from her position on September 9, 2024, less than two (2) weeks after confronting Defendants about Omnis perceived fraud and misrepresentations to induce governmental officials to allocate funding to Defendants. Ex. A at ¶¶ 65-75. This is quintessential "unusually suggestive timing." The day following her termination, Ms. Christian received a threatening message from Defendants' counsel telling her "Please be very careful about how you move forward here Michelle." *Id.* at ¶ 76. The only plausible reason for this threat was because Ms. Christian recently confronted Defendants about their financial statement misrepresentations to garner governmental support and funding and she vocalized her intentions to report the fraud.

Given the proximity in time of Ms. Christian's last in person confrontation with Defendants' owner Mr. Hodson over his companies' financial statements (August 30, 2023), her subsequent termination on September 9, 2023, and the threatening message she received from

12

Defendants' counsel on September 10, 2023, Ms. Christian indeed provided facts sufficient at the Motion to Dismiss stage, to show she could establish at trial she was terminated "because of" her protected conduct.

### C. Plaintiff has alleged facts sufficient to show Defendants' could be held liable as either integrated or joint employers – or both.

Defendants argue that Ms. Christians' claims should be dismissed at this early stage of litigation because she failed to differentiate between Defendants and their actions vis a vi each separate legal entity. The Defense equates not delineating a joint employers' actions in the complaint as a to a failure to provide individual companies with proper notice of what they are being accused of. Defendants find support for the alleged deficiency in notice by misinterpreting Fed. R. Civ. P. 8(a)(2) and citing various cases with facts dissimilar to the facts at hand.

A District Court in New Jersey provides an instructive analysis about "group pleading," in an [FLSA] employment action in *Ojeda v. Louis Berger Grp.* (Domestic), No. 18-17233 (KM) (JBC), 2021 U.S. Dist. LEXIS 46691, at *12 (D.N.J. Mar. 11, 2021). Therein, the Court discussed that "[t]he permissibility of collective allegation **varies with the cause of action asserted**," noting the difference between causes of action which require "personal involvement," such as a Section 1983 and those that allow for *respondent superior liability* (in that case, the FLSA). The case at bar asserts claims under Title VII which strictly allows liability through a respondent superior theory, and does not even permit individuals to be sued under the Act. Separately, in another employment action permitting respondeat superior liability, the Third Circuit in in *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014) rejected an employer's argument that the plaintiff's allegations improperly "group[ed] all defendants—individual and corporate—together and fail[ed] to differentiate between them as to alleged wrongful conduct." 748 F.3d at 148. The Court concluded that the pleadings "put the corporate

13

defendants on fair notice" of the allegations against them. *Id.*[3]

Ms. Christian claims that she "performed work for and on behalf of all Omnis' Defendants," and

> "Defendants do not make any efforts to recognize corporate formalities, and comingle assets between Defendant entities entangle leadership, and overall business operations. . . . . . Plaintiff was paid through Defendant Omnis Global Technologies LLC, but as time went on, Defendants started paying Plaintiff through Defendant OBT Bluefield LLC and the other named Defendants; [and] importantly, Plaintiff reported to individuals within each of these entities and was held out to the public (including government entities) as working for each of the named Defendants."

Ex. A, at ¶¶ 12, 14 FN 2. Under two different theories—the "single employer theory" and the "joint employer theory"—multiple legally separate entities can be considered a single employer for employment claims. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 87 (3d Cir. 2003); *Xiao v. Sichuan Gourmet LLC*, No. 2:21-CV-00482, 2022 U.S. Dist. LEXIS 49050, 2022 WL 819096, at *4 (W.D. Pa. Mar. 18, 2022). "Both the joint employer and the single employer doctrines involve fact-intensive analyses which are generally inappropriate at the motion to dismiss stage." *Hayes*, 2013 U.S. Dist. LEXIS 138141, 2013 WL 5434139 at *9; *see also Hartman v. Chestnut Hill Coll.*, No CIV. A. 00-1400, 2000 U.S. Dist. LEXIS 10330, 2000 WL 1016655, at *2 (E.D. Pa. July 7, 2000) ("Although these allegations do not specifically bring defendant . . . into a 'single employer' or 'joint employer' role with the other defendants, it would be premature to dismiss the complaint, because these allegations, when taken in a light most favorable to plaintiff, could lead a reasonable mind to believe that defendant . . . was in fact a "single employer" or a 'joint employer.'").

---

[3] "[A][t the pleading stage a plaintiff may allege that a group of defendants were involved in a decision to terminate the plaintiff, and that discovery will determine how each defendant was involved." *Abell v. Pacira Pharm., Inc.*, Civil Action No. 18-16509, 2019 U.S. Dist. LEXIS 224627, at *8 (D.N.J. July 31, 2019).

14

Multiple entities may constitute a single employer where the entities are nominally independent but in practice operate as one integrated enterprise. *Xiao*, 2022 U.S. Dist. LEXIS 49050, 2022 WL 819096 at *4 (citing *NLRB. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). In evaluating whether multiple companies constitute a "single employer," the Third Circuit "considers the level of interrelation of operations, whether there is shared common management, whether labor relations are under centralized control, and whether there is common ownership or financial control." 2022 U.S. Dist. LEXIS 49050, [WL] at *8 (citing *Nesbit*, 347 F.3d at 84). Two distinct entities may be liable for the same Title VII violation if the entities are joint employers. *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)). A joint employment relationship exists when "two entities exercise significant control over the same employees." *Id*. To determine whether an entity exercises significant control over an employee, courts consider the factors articulated in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992). The essence of the Darden test is whether the entity has "the right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323.

This Court has previously held that "[w]hen a plaintiff alleges some facts satisfying joint employer theory factors, even where there is a 'thin' factual record," the "pleading survives dismissal*." See Rippy v. Phila. Dep't of Pub. Health,* No. 19-cv-01839, 2019 U.S. Dist. LEXIS 170195, 2019 WL 4849439, at *5 (E.D. Pa. Sept. 30, 2019).[4] Additionally, "the joint employer and the single employer doctrines involve fact-intensive analyses" that "are generally inappropriate

---

4 *and see Lara v. Samuel Adams Pa. Brewing Co., LLC*, No. 5:20-cv-0498, 2020 U.S. Dist. LEXIS 158267, at *33-34 (E.D. Pa. Sep. 1, 2020)("These allegations are thin indeed. What is more, none of the alleged conduct supporting Lara's discrimination and retaliation claims in any way implicates any agent or employee *of HTTS*; to the contrary, Lara's grievances concern the conduct of Sam Adams employees exclusively. And yet, for several reasons, at this stage of the litigation the Court declines to find that HTTS was not Lara's "employer" under the applicable legal standard. . . . . . it is likely that discovery will produce evidence capable of supporting a claim of an employee-employer relationship between Lara and HTTS.).

at the motion to dismiss stage*." See Hayes v. Waddell & Reed, Inc.,* No. 12-cv-00293, 2013 U.S. Dist. LEXIS 138141, 2013 WL 5434139, at *9 (W.D. Pa. Sept. 26, 2013)("At the motion to dismiss stage, it need not be 'entirely clear' that the factual allegations in the plaintiffs complaint will ultimately prove 'joint employer' status.").  This Court has also found that "[a]t the motion to dismiss stage, it need not be 'entirely clear' that the factual allegations in the plaintiff's complaint will ultimately prove 'joint employer' status. Rather, the inquiry is whether a plaintiff 'is entitled to offer evidence to support the claims.'" (citation omitted) (first quoting *Myers v. Garfield & Johnson Enters. Inc.*, 679 F. Supp. 2d 598, 611 (E.D. Pa. 2010); and then quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).  In short, where Plaintiff alleges some facts showing Defendants are joint employers, Plaintiff need not also delineate and assign actions to individual Defendants at the pleading stage before discovery takes place. *See CommScope, Inc. v. Rosenberger Tech. (Kunshan*) Co., Civil Action No. 19-15962, 2021 U.S. Dist. LEXIS 177852, at *6 n.5 (D.N.J. Feb. 26, 2021).

Ample facts establish a joint or integrated employer scenario here.  Ms. Christian was required to work with management from each of the Defendant companies.  ECF at ¶¶ 18-19, 21, 24,.  Simon Hodson, his two sons, and many of Omnis' executives were involved in managing each of the Omnis Companies' day-to-day businesses.  *Id.* Ms. Christian was also expected to use her expertise and governmental connections for the development of all the named Omnis Defendants, and she did.  *Id.* at ¶ 15.  Additionally, Defendants comingled their funds evidenced by Ms. Christian's salary payments depositing from different Omnis accounts.  *Id.* at ¶ 14 footnote 2.  Defendant's' failure to keep management, funds, and Plaintiffs' job specific to one Omnis company so that differentiation of Defendants would be possible prior to discovery, should not result in sustaining a motion to dismiss against Ms. Christian.

## IV.     CONCLUSION

At this stage in the litigation, Ms. Christian has plead more than sufficient facts to state a claim for relief under the FCA.  Ms. Christian pursues a joint/integrated theory of liability and thus differentiating between Defendant Omnis actors is not legally required. Finally, Ms. Christian has shown in a separate Response Brief that the Eastern District is the proper venue to litigate her claims.  For the foregoing reasons, Plaintiff respectfully deny Defendants' Motion to Dismiss.


Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke* _____
Christine E. Burke, Esq.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
Attorney for Plaintiff

Date: June 11, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHELLE CHRISTIAN : <br> : <br> Plaintiff, : <br> : Civil Action No.: 2:24-cv-01319 <br> v. : <br> : <br> OMNIS GLOBAL TECHNOLOGIES, LLC : <br> and : <br> OMNIS BUILDING TECHNOLOGIES, LLC : <br> and : <br> OBT BLUEFIELD, LLC : <br> and : <br> OMNIS FUEL TECHNOLOGIES LLC : <br> d/b/a OMNIGEN : <br> and : <br> OMNIS SUBLIMATION RECOVERY : <br> TECHNOLOGIES, LLC : <br> : <br> Defendants. : | |

**CERTIFICATION OF SERVICE**

I certify on the date set forth below that I served Defendant with a copy of Plaintiff's Response Brief to Defendants' Motion to Dismiss at the following address via ECF:

Matthew J. Hank, mhank@littler.com
Alexa J. Laborda Nelson, alabordanelson@littler.com
Haley R. Norwillo, hnorwillo@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street
Suite 1400
Philadelphia, PA 19102

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke*
Christine E. Burke, Esq.

Dated: June 11, 2024

18