## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE CHRISTIAN<br>109 Signal Hill Road,<br>Holland, Pennsylvania 18966,<br><br>    Plaintiff,<br><br>v.<br><br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>3710 Collins Ferry Road,<br>Morgantown, WV 26505<br> and<br>OMNIS BUILDING TECHNOLOGIES, LLC<br>3710 Collins Ferry Road,<br>Morgantown, WV 26505<br> and<br>OBT BLUEFIELD, LLC<br>3710 Collins Ferry Road,<br>Morgantown, WV 26505<br> and<br>OMNIS FUEL TECHNOLOGIES LLC<br>d/b/a OMNIGEN<br>3710 Collins Ferry Road,<br>Morgantown, WV 26505<br> and<br>OMNIS SUBLIMATION RECOVERY<br>TECHNOLOGIES, LLC<br>3710 Collins Ferry Road,<br>Morgantown, WV 26505<br> and<br>SIMON HODSON<br>3710 Collins Ferry Road<br>Morgantown, WV 26505<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:24-cv-01319-MRP<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Plaintiff, Michelle Christian ("Ms. Christian") by and through her undersigned counsel, hereby responds as follows to Defendants' Partial Motion to Dismiss Count III of her Complaint and relies upon the Brief attached hereto in support of her Response.

        Respectfully Submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

        */s/ Christine E. Burke*
        Christine E. Burke, Esq.
        8 Interplex Drive
        Suite 210
        Feasterville-Trevose, PA 19053
        Attorneys for Plaintiff

Date: December 2, 2024

I.  **<u>INTRODUCTION/PROCEDURAL BACKGROUND</u>**

On March 28, 2024, Ms. Christian filed a Complaint against her prior joint/integrated employers: Omnis Global Technologies, LLC, Omnis Building Technologies, LLC, OBT Bluefield, LLC, Omnis Fuel Technologies, LLC d/b/a/ Omnigen, and Omnis Sublimation Recovery Technologies, LLC (*hereinafter* collectively referred to as "Defendants"). Dkt No.: 1. Ms. Christian asserted therein that she was unlawfully terminated in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq*.), the False Claims Act (31 U.S.C. § 3730(h)(1)), and raised failure to pay certain bonuses promised, sounding in claims for unjust enrichment, breach of contract, promissory estoppel and the Pennsylvania Wage Payment and Collection Law ("WPCL")(43 Pa. Stat. Ann. § 260.9). *Id.*

On May 28, 2024, Defendants filed a Motion to Dismiss Ms. Christian's Complaint under Federal Rule of Civil Procedure 12(b)(6).[1]  Dkt.: No.: 10.  On November 4, 2024, Plaintiff amended her complaint to include violations of the Pennsylvania Human Relations Act ("PHRA") against all named Defendants and Simon Hodson as an individual. Exhibit A.  On November 18, 2024, a Partial Motion to Dismiss Count III of Plaintiff's amended Complaint (Dkt. No.: 28), and a partial Answer to Plaintiff's First Amended Complaint with a Counter Claim. Docket No. 29.

Defendants presently argue that Ms. Christian fails to state a claim of retaliation under the False Claims Act ("FCA").  Defendants' brief describes the requirements for stating such a claim but ignores all the material facts Ms. Christian pled to support her FCA claim.  To state a claim of retaliation under the FCA, a plaintiff must plead enough facts to plausibly suggest she had an objectively reasonable belief the employer made, or was about to make, a false claim to cause the government to pay money – and she engaged in efforts to halt such illegal activities.  Defendants

---

[1] Defendants also filed a Motion to Transfer venue to West Virginia; that Motion has since been withdrawn.

1

also erroneously argue Ms. Christian must establish "but for" causation at the pleading stage, which is not accurate.

## II.     FACTUAL BACKGROUND

Ms. Christian was hired by Defendant Omnis Global Technologies, LLC on November 16, 2020, as its Vice President of Government Relations, with an annual salary of $250,000. Ex A at ¶¶ 14, 102. At that time, Defendant Omnis Global Technologies, LLC was based out of Santa, Barbara California and Ms. Christian was hired to work from her home in Bucks County PA, and travel when needed. *Id*. at ¶ 16. Ms. Christian was hired by Defendants' owner Simon K. Hodson and directed to report to him throughout her tenure. *Id*. at ¶ 18.

Eventually Defendant Omnis companies became based out of the West Virginia address contained in the caption. *Id.* at ¶ 17. In her capacity as VP of Governmental Relations, Ms. Christian was expected to connect **all** Defendant Omnis companies with public contacts to develop and expand Defendant's Omnis businesses. *Id*. at ¶ 15.

Due to Defendants' financial condition in July 2021, Ms. Christian was furloughed. *Id.* at ¶ 103. Defendants sent Ms. Christian a new offer letter on July 22, 2021, requesting she return to as the VP of Governmental Affairs. *Id*. at ¶ 105. The offer letter stated that Ms. Christian's salary would be $54,080 annually along with a non-discretionary bonus once they secured $10 million or more of outside funding. *Id*. at ¶ 106. Defendants represented both in writing and orally that the non-discretionary bonus would be 110% of the difference Ms. Christian would have received under the terms of her previous employment prior to furlough ($250,000.00) and her current salary under the terms of the new employment offer ($58,080.00). *Id*. at ¶ 107. Ms. Christian induced by the bonus, accepted the offer to return to her remote VP position with Defendants. *Id*. at ¶ 108.

Defendants did indeed receive over 10 million in outside funding, but Ms. Christian never received any of the $215, 512.00 promised to her as a bonus from Defendants. *Id*. at ¶ 110.

Throughout Ms. Christian's employment with Defendant, she experienced an array of sex-based and religious-based discriminatory and harassing behavior from executives within Defendants company while on work trips in different states and while working remotely from her home. *Id.* at ¶¶ 23-53. This behavior included comments about her appearance, pointed statements about a woman's place in the household raising children, grooming young women to become members of the Latter-Day Saints, and attempts to convert Ms. Christian to Mormonism (all the company executives and employees in decision making positions were male, Mormon, and belonged to the Mormon Church of Latter-Day Saints). *Id.* Despite Ms. Christian's protests, her male colleagues persisted with sexist comments, aggressive religiously charged discriminatory statements and treatment, and simply isolating behavior toward her up until her termination with Omis. *Id.* When Ms. Christian reported the behavior to Mathew Hart, VP of HR, a member of the Mormon LDS church, he said he found nothing wrong with the behavior and also believed in the teachings of the church. *Id*. at ¶ 36.

Between June through August 2023, in preparation of impending meetings with government officials, Ms. Christian began asking Mr. Hodson about discrepancies in Defendants' companies financial documents. *Id.* at ¶ 59. Ms. Christian expressed concerns about Defendants' misrepresentation of their financial situation because she was tasked with explaining their finances to government officials in her day-to-day duties of securing government funding, contracts, and support. *Id.* at ¶ 61. When questioned by Ms. Christian, Mr. Hodson responded that she "whines a lot." *Id*. at ¶ 62. Ms. Christian sought further clarification of the financial documents from Charles Gassenheimer, an employee of Omnis Bailey, LLC and Omnis Regenerative, LLC,

3

regarding her concerns about the financing and validity of statements Hodson was making to state and federal government officials. *Id.* at ¶ 63. Mr. Gassenheimer tried to deter her from delving into the issue further – and told her no one would listen to her or take her concerns seriously because she was not a part of the Latter-Day Saints Church. *Id*. at ¶ 64.

During an August 30, 2023, hours long in person conversation, Ms. Christian confronted Mr. Hodson about the false financial representations he was making to government officials. *Id.* at ¶ 65. Ms. Christian openly objected to Mr. Hodson's ongoing efforts to defraud governmental officials for company investments. *Id.* Further, Ms. Christian made clear that she would not lie on Mr. Hodson or Defendants' behalf. Id. at ¶ 66. In an attempt to manipulate Ms. Christian and minimize her concerns, Mr. Hodson inappropriately made an advance toward her saying "hold my hands and look into my eyes and tell me you believe me" to which Ms. Christian responded immediately "don't touch me." *Id*. at ¶¶ 68, 69. Mr. Hodson responded to Ms. Christian's rejection by telling her she "should go." *Id.* at ¶ 69.

On or about September 5, 2023, with the knowledge that Ms. Christian had upcoming meetings with government officials about Defendants' financial documents and actual financial situation, Mr. Hodson texted her with details about a new proposed job focus. *Id.* at ¶¶ 65, 71. The new job duties included ceasing her work with Defendant Omnis Global Technologies, LLC and switching to work directly with OBT Bluefield under Simon Hodson's son Jonathon Hodson, continuing to leverage Ms. Christian's government contacts to develop a manufacturing plant. *Id.* at ¶¶ 71-73. The following day, on September 6, 2023, Ms. Christian sent an email to Mr. Hodson summarizing her disdain for the "unbearable" mistreatment she had experienced working for Defendants' thus far, and specifically her disdain for his inappropriate actions toward her during their in-person August 30, 2023, encounter. *Id.* at ¶ 74. Days later, on September 9, 2023, Ms.

4

Christian received an email from Defendants' general counsel Blake Stephens instructing her to "immediately cease and desist all work for any of the Omnis companies.". *Id.* at ¶ 75.

On September 10, 2023, Stephens threatened Ms. Christian by stating "Please be very careful about how you move forward here Michelle." *Id.* at ¶ 76. Since then, presumably concerned with Ms. Christian's whistle-blowing activities, Defendants filed a separate civil action against Ms. Christian in Bucks County Court of Common Pleas to recover the laptop and all of its contents. *Id.* at ¶ 78.

### III. LEGAL ANALYSIS

#### A. Standard of Review

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), a court is required to "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 375 n. 7 (3d Cir. 2002)). In a complaint, a district court is supposed to accept not only all allegations as true but all inferences arising from the allegations as true. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

Since *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the pleading standard has changed slightly. The Third Circuit has revisited the pleading standard since Twombly and has determined that "under our reading [of Twombly], the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests." Phillips, 515 F.3d at 233 (internal citations omitted). Put simply, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up as follows: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This instead imposes a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234 (internal citations removed).

In employment discrimination cases, the Supreme Court of the United States has previously held that a plaintiff is not required to establish a prima facie case at the pleadings stage. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)(emphasis added)("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). While there is some question as to the applicability of *Swierkiewicz* post *Twombly and Iqbal, see Fowler*, 578 F.3d at 211-13, the United States Court of Appeals for the Third Circuit has noted that "the quantum of facts that a discrimination complaint should contain" continues to be a question ripe for further development. See *Guirguis v. Movers Specialty Servs.,* 346 F. App'x 774, 776 n.6 (3d Cir. 2009). A District of New Jersey Court has stated, "[r]econciling Swierkiewicz, Twombly, and Iqbal, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Huggard v. Crown Bank*, 2012 U.S. Dist. LEXIS 20501 *11 (D.N.J. Feb. 17, 2012); *Barbosa v. Continuum Health Partners Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010).

Despite Defendants' suggestion that a plaintiff is required to prove her entire case within her Complaint, the law clearly does not require a plaintiff to do so. Once again, a plaintiff's Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to

6

relief." Fed. R. Civ. P. 8(a)(2). Ms. Christian has more than sufficiently pled enough facts which could give rise to an inference that Defendants committed FCA violations, and were acting as "joint" or "integrated" employers at all times relevant to the Complaint.

**B. Ms. Christian has properly pleaded a violation of the False Claims Act**

Section 3730(h)(1) of the FCA provides:

> "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

Congress amended whistleblower protections in 2010, expressly protecting "lawful" acts "in furtherance of" either "an action" under the FCA or "other efforts to stop 1 or more violations of" the Act. 31 U.S.C. § 3730(h)(1); *see, e.g.*, *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 765 (10th Cir. 2019) (adopting these two amendments to the Act). The legislative history confirms the change was made to "protect[] not only steps taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy the misconduct . . . whether or not such steps are clearly in furtherance of a potential or actual qui tam action." 155 Cong. Rec. E1295-03, E1300 (June 3, 2009) (statement of Rep. Berman).

"[T]he pleading standard of Rule 8 governs FCA retaliation." *United States ex rel. Ruggeri v. Magee-Womens Rsch. Inst. & Found.*, No. 2:19-CV-862-NR, 2024 U.S. Dist. LEXIS 74377, at *10 (W.D. Pa. Apr. 24, 2024)(not a heightened Rule 9 standard for pleading fraud).

To state a claim of retaliatory discharge in violation of the FCA a plaintiff must allege two elements: (1) that he [or she] engaged in protected conduct, and (2) that he [or she] was discriminated against because of his [or her] protected conduct. *DiFiore v. CSL Behring, LLC,*

7

879 F.3d 71, 76 (3d Cir. 2018); *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 194 (3d Cir. 2022).

Under the text of the statute, protected conduct encompasses either: 1) a lawful act done to further an FCA action; or 2) "other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). Respectively, these are referred to as the "FCA litigation prong" and the "'other efforts' prong." *Ascolese*, 55 F.4th at 194. "Congress's addition of the 'other efforts' prong through 2009 and 2010 amendments reflects Congress's intent to expand FCA's anti-retaliation protections." *Hall v. Abington Mem'l Hosp.*, No. CV 22-2429, 2023 U.S. Dist. LEXIS 170044, 2023 WL 6216526, at *3 (E.D. Pa. Sept. 25, 2023).

The central focus here is whether or not Ms. Christian plead sufficient facts that she took actions to prevent activities she reasonably believed were in violation of the FCA, as:

> **Protected conduct is not limited to pursuing or contemplating an FCA action. It includes taking action to prevent or halt violations or reasonably perceived violations of the FCA**. *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 191 (3d Cir. 2022) (citing 31 U.S.C. § 3730(h)(1)).

*United States ex rel. Scheer v. Beebe Healthcare*, No. 20-6117, 2024 U.S. Dist. LEXIS 9769, at *30 (E.D. Pa. Jan. 18, 2024)(emphasis added).

"Protected conduct" is defined as that activity that reasonably could lead to a viable FCA action. *See McKenzie v. Bellsouth Telecomms., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000) (citation omitted). A plaintiff "need not use formal words of 'illegality' or 'fraud." An employee need not have actual knowledge of the FCA for her actions to be considered "protected activity" under § 3730(h). If so, only those with sophisticated legal knowledge would be protected by the statute. *United States ex rel. Yesudian v. Howard Univ.,* 332 U.S. App. D.C. 56, 153 F.3d 731, 741 (D.C. Cir. 1998)(". . . only [lawyers] would know from the outset that what they were investigating could

8

lead to a False Claims Act prosecution.").

The second element requires a plaintiff to assert that his or her "employer had knowledge that he [or she] was engaged in 'protected conduct' and that the employer retaliated against him [or her] because of that conduct." *United States ex rel. Carroll v. Hackensack Meridian Pascack Valley Med. Ctr.,* No. 21-18104 (SDW) (ESK), 2023 U.S. Dist. LEXIS 223862, at *1 (D.N.J. 2023) (quoting *Hutchins v. Wilentz*, 253 F.3d 188 (3d Cir. 2001)). There are two types of "protected conduct" under the FCA: (1) "lawful acts done . . . in furtherance of" an FCA action; and (2) "other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1); *See Hall v. Abington Mem'l Hosp.,* No. 22-2429, 2023 U.S. Dist. LEXIS 170044, at 8-9 (E.D. Pa. 2023).

A plaintiff's pleading under the second prong for "protected conduct" must plead facts plausibly suggesting "that some nexus exists between their actions and the prevention of an actual or potential violation of the FCA." *Hall*, 2023 LEXIS 170044, at 11.

### i. **Plaintiff pled ample facts to plausibly suggest that she engaged in protected conduct under the FCA**

Defendants argue that Ms. Christian did not plead facts sufficient to plausibly suggest she engaged in "protected conduct" under the FCA. Defendants cite Ms. Christian's area in the pleadings regarding her initial confusion about the companies' financial statements not adding up to support that she does not meet the first FCA prong. (MTD p 6 ¶ 1.)

Ms. Christian specifically plead that she "became concerned about Hodson and the Omnis companies making false representations to state and federal officials in order to receive funds and assistance in the form of government loans and grants." Ex A, at ¶ 90. She also plead that she: "reasonably believed Defendants were altering their books to make it appear as if Defendants were in a better financial position than they actually were, and that Hodson was *presenting these altered financial statements to state and federal officials to secure government funds*." *Id.* at 91 (emphasis

9

and underline added). Submitting false financial statements to the federal government in an effort to secure federal government funds – is the essence of a false claims violation (namely 18 USCS § 287 and 31 USCS § 3729).

Omnis need not have known that Ms. Christian was contemplating FCA litigation, and her internal of false claims are protected. *See United States ex rel. Scheer v. Beebe Healthcare*, No. 20-6117, 2024 U.S. Dist. LEXIS 9769, at *31 (E.D. Pa. Jan. 18, 2024)(a plaintiff "is s not required to allege that Beebe was on notice that he was contemplating FCA litigation. *Ascolese*, 55 F.4th at 191. The FCA protection extends to internal reporting of false or fraudulent claims. *Hutchins*, 253 F.3d at 187 (citing *Yesudian*, 153 F.3d at 739)).

Furthermore, Ms. Christian contacted another high-level executive within the organization: CEO Gassenheimer[2] on June 28, 2024, to express her concerns about Defendants' financial misrepresentations. Ex. A at ¶¶ 91-93. During this conversation, Mr. Gassenheimer informed Ms. Christian that she will get nowhere with her allegations, and no one will listen to her or take her seriously. *Id.* On August 30, 2023, Ms. Christian proceeded to confront Mr. Hodson for the last time about false statements he was making to state and federal government officials to induce them to provide funding, and her intentions to report his fraud to the government. Ex. A at ¶ 93-94. Her complaint also includes facts showing that Defendants were aware of her impending meetings with government officials in the coming weeks to discuss funding and contracts for Omnis. *Id.* at 65-67. Based on these facts, Ms. Christian did indeed plausibly engage in protected conduct under the FCA and meets prong one.

---

[2] Gassneheimer holds himself out to the public as the CEO of the Omnis Bailey entity. *See* Washington County Chamber of Commerce: CNX Coatl Resources, OMNIS to develop solid energy refinery to produce clean coal, available at https://www.washcochamber.com/news/cnx-coal-resources-omnis-to-develop-solid-energy-refinery-to-produce-clean-coal  last visited December 2, 2024.

10

### ii.     A plaintiff need not show "but for" causation at the Motion to Dismiss stage

Defendants argue that Ms. Christian's FCA claim should be dismissed because she did not plead facts sufficient to establish "but for" causation. Ms. Christian need only show "that [her] employer's retaliation **was motivated, at least in part**, by the employee's engaging in protected conduct." *United States ex rel. Ruggeri v. Magee-Womens Rsch. Inst. & Found.*, No. 2:19-CV-862-NR, 2024 U.S. Dist. LEXIS 74377, at *30 (W.D. Pa. Apr. 24, 2024)(citing *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001)).

Defendants are infusing a trial burden at the pleading stage. Their citation to *DiFiore* only enforces this point, as this was a decision issued by the Third Circuit after trial and as to the jury instructions provided on the FCA retaliation claim.  While Ms. Christian will bear her burden of proof at trial, she is not required to show but-for causation at the pleading stage.

While Ms. Christian is not required to show "but for" causation at the Motion to Dismiss stage, she nonetheless has pled facts sufficient to show that her termination would not have occurred "but for" her "protected actions" evidenced by the timeline of her actions and discharge from Defendants' companies.  Ms. Christian was terminated from her position on September 9, 2024, less than two (2) weeks after confronting Defendants about Omnis perceived fraud and misrepresentations to induce governmental officials to allocate funding to Defendants.  Ex. A at ¶¶ 65-75.  This is quintessential "unusually suggestive timing."3  The day following her termination, Ms. Christian received a threatening message from Defendants' counsel telling her "Please be very careful about how you move forward here Michelle." *Id.* at ¶ 76.  The only plausible reason for this threat was because Ms. Christian recently confronted Defendants about

---

3 *United States ex rel. Scheer v. Beebe Healthcare*, No. 20-6117, 2024 U.S. Dist. LEXIS 9769, 2024 WL 219395, at *13 (E.D. Pa. Jan. 18, 2024) ("A plaintiff may establish a causal connection through the unusually suggestive temporal proximity of the adverse action to the protected activity[.]" ).

11

their financial statement misrepresentations to garner governmental support and funding and she vocalized her intentions to report the fraud.

Given the proximity in time of Ms. Christian's last in person confrontation with Defendants' owner Mr. Hodson over his companies' financial statements (August 30, 2023), her subsequent termination on September 9, 2023, and the threatening message she received from Defendants' counsel on September 10, 2023, Ms. Christian indeed provided facts sufficient at the Motion to Dismiss stage, to show she could establish at trial she was terminated, at least in part, "because of" her protected conduct.

## IV.   CONCLUSION

At this stage in the litigation, Ms. Christian has plead more than sufficient facts to state a claim for relief under the FCA. For the foregoing reasons, Plaintiff respectfully deny Defendants' Motion to Dismiss.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke* _____
Christine E. Burke, Esq.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
Attorney for Plaintiff

Date: December 2, 2024

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE CHRISTIAN<br>109 Signal Hill Road,<br>Holland, Pennsylvania 18966,<br><br>       Plaintiff,<br><br>v.<br><br>OMNIS GLOBAL TECHNOLOGIES, LLC<br>3710 Collins Ferry Road,<br>Morgantown, WV 26505<br>       *et. al.*<br>       Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 2:24-cv-01319-MRP<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>) |

## **CERTIFICATION OF SERVICE**

I certify on the date set forth below that I served Defendants with a copy of Plaintiff's Response Brief to Defendants' Partial Motion to Dismiss at the following address via ECF:

Matthew J. Hank, mhank@littler.com
Alexa J. Laborda Nelson, alabordanelson@littler.com
Haley R. Norwillo, hnorwillo@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street
Suite 1400
Philadelphia, PA 19102

                                            **KARPF, KARPF & CERUTTI, P.C.**

                                            */s/ Christine E. Burke*_____
                                            Christine E. Burke, Esq.

Dated: December 2, 2024