# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE CHRISTIAN,<br><br>      Plaintiff,<br><br>v.<br><br>OMNIS GLOBAL TECHNOLOGIES, LLC; OMNIS BUILDING TECHNOLOGIES, LLC; OBT BLUEFIELD, LLC; OMNIS FUEL TECHNOLOGIES LLC D/B/A OMNIGEN; OMNIS SUBLIMATION RECOVERY TECHNOLOGIES, LLC; AND SIMON HODSON,<br><br>      Defendants. | Civil Action No. 2:24-cv-01319 |

## MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ....................... 1
III. LEGAL ARGUMENT .................................................................................................... 3
   A. 12(b)(1) Standard ..................................................................................................... 3
   B. Under Rule 13, Federal Courts Have Subject Matter Jurisdiction Over Compulsory Counterclaims............................................................................................................ 3
      1. Ms. Christian and the Defendants' Claims Involve Many of the Same Factual Issues 4
      2. Ms. Christian and the Defendants' Claims Involve Some of the Same Legal Analysis …………………………………………………………………………………………..6
      3. The Interest of Judicial Economy Weighs in Favor of Retaining Jurisdiction Over Defendants' Counterclaim ........................................................................................ 8
IV. CONCLUSION................................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Aldens v. Packel,*
   524 F.2d 38 (3d Cir. 1975) ................................................................................................... 4

*Ambromovage v. United Mine Workers of Am.,*
   726 F.2d 972 (3d Cir. 1984) ................................................................................................. 3

*Bagasra v. Thomas Jefferson Univ.,*
   424 F.3d 336 (E.D. Pa. 1999) .............................................................................................. 7

*Great Lakes Rubber Corp. v. Herbert Cooper Co.,*
   286 F.2d 631 (3d Cir. 1961) ............................................................................................. 4, 7

*Petruska v. Gannon Univ.,*
   462 F.3d 294 (3d Cir. 2006) ................................................................................................. 3

*Sarullo v. U.S. Postal Serv.,*
   352 F.3d 789 (3d Cir. 2003) ................................................................................................. 7

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,*
   292 F.3d 384 (3d Cir. 2002) ............................................................................................. 4, 8

*Xerox Corp. v. SCM Corp.,*
   576 F.2d 1057 (3d Cir. 1978) ............................................................................................... 4

**State Statutes**

42 Pa.C.S. § 8343 ........................................................................................................................ 7

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................................... 3

Federal Rule of Civil Procedure 13(a) ............................................................................... 1, 4, 9

**I.     INTRODUCTION**

Defendants Omnis Global Technologies, LLC, ("OGT"), Omnis Building Technologies, LLC, ("OBT"), OBT Bluefield, LLC, ("OBT Bluefield"), Omnis Fuel Technologies LLC D/B/A Omnigen ("OFT"), Omnis Sublimation Recovery Technologies, LLC, ("OSRT"), and Simon Hodson (collectively, "Defendants") respond in opposition to Plaintiff Michelle Christian's ("Ms. Christian") Motion to Dismiss Defendants' Counterclaim for lack of subject matter jurisdiction. (ECF 31).

An examination of Federal Rule of Civil Procedure 13(a) and caselaw analyzing same establishes that Defendants' defamation counterclaim is compulsory. The counterclaim is both factually and legally intwined with Ms. Christian's claims of discrimination. As such, judicial economy, the cornerstone of Rule 13, compels the claims to remain in the same litigation. Defendants respectfully request that the Court deny Ms. Christian's Motion to Dismiss the Counterclaim.

**II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY**

Ms. Christian filed her First Amended Complaint on November 4, 2024, alleging sex and religious discrimination, retaliation, and unjust enrichment. (ECF 24). Ms. Christian began working for OGT on November 16, 2020, as the Vice President of Government Relations, reporting directly to OGT President Simon Hodson. (ECF 24, at ¶¶ 14, 18). Ms. Christian was responsible for "connecting all Defendant Omnis companies with private and public contacts to develop all Defendant Omnis' businesses." (*Id.* at ¶ 15).

In support of her sex and religious discrimination claims, Ms. Christian alleges that "…activities took place that demonstrated Hodson did not value women as equal contributors and clearly saw young impressionable women as merely potential new members of his faith (to be married off to LDS members)." (*Id.* at ¶ 42). She states that Hodson met two girls, ages 16 and 17,

1

in Johnstown, Pennsylvania and convinced the girls to begin traveling with the company throughout Pennsylvania, West Virginia, and California. (*Id.* at ¶¶ 43-44). Ms. Christian never saw the interns perform any work. (*Id.* at ¶ 45). Ms. Christian claims she "expressed her discomfort in having girls who were in high school and under 18 years of age stay in hotels with Defendants' management…" (*Id.* at ¶ 46). Mr. Hodson allegedly asked Plaintiff, and no other male employee, to watch over the girls and take care of them because Ms. Christian was one of the only female executives at Defendants. (*Id.* at ¶¶ 48-49). Ms. Christian then states that Hodson and Defendants were taking the girls to LDS Church. (*Id.* at ¶ 51). Ms. Christian alleges that Hodson treated her as his "personal assistant or a female caretaker" by asking her to help them get into college and obtain a waiver to live off-campus. (*Id.* at ¶¶ 52, 54).

In her role with Omnis, Ms. Christian came in contact with Randa Fahmy. (ECF 24, Counterclaim, at ¶ 7). Ms. Fahmy is the sole member of Fahmy Hudome Int'l, LLC. (*Id.* at ¶ 5). Fahmy Hudome Int'l, LLC and Omnis Fuel Technologies, LLC entered into a third-party consultancy agreement on April 28, 2023. (*Id.* at ¶ 4). On June 27, 2024, after Ms. Christian ceased working for Defendants, Ms. Christian called Ms. Fahmy. (*Id.* at ¶ 8). During that phone call, Ms. Christian told Ms. Fahmy that Simon Hodson "is trafficking women" and "trafficked two young women and had me involved in it." (*Id.* at ¶ 9). Ms. Christian stated that "one of them I put up in an apartment and they married off the other one to some Mormon guy." (*Id.* at ¶ 10). Ms. Christian then stated, "yeah, he's trafficking women like Jeffrey Epstein." (*Id.* at ¶ 11). Ms. Fahmy understood Ms. Christian's June 27, 2024, statements to mean that Mr. Hodson and the Omnis family of companies committed and are committing the criminal offense of human trafficking. (*Id.* at ¶ 17). During the June 27, 2024 discussion, Ms. Christian encouraged Ms. Fahmy to review the Complaint in this case. (*Id.* at ¶ 18).

Because of the above comments by Ms. Christian, Defendants filed a Partial Answer and a Counterclaim for defamation on November 18, 2024. (ECF 29). On December 2, 2024, Ms. Christian filed a Motion to Dismiss Defendants' Counterclaim for a lack of subject matter jurisdiction. (ECF 31). Defendants now timely respond in opposition to Plaintiff's Motion to Dismiss the Counterclaim.

### III.    LEGAL ARGUMENT

#### A.    12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case. *Petruska v. Gannon Univ.,* 462 F.3d 294, 302 (3d Cir. 2006). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." *Id.* at 302 n. 3. Here, Defendants' counterclaim for defamation falls within the Court's power to hear compulsory counterclaims under Federal Rule of Civil Procedure 13.

#### B.    Under Rule 13, Federal Courts Have Subject Matter Jurisdiction Over Compulsory Counterclaims

Federal Rule of Civil Procedure 13 establishes two kinds of counterclaims: compulsory and permissive. Fed. R. Civ. P. 13. To bring a compulsory counterclaim

> [a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:, (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

*See* Fed. R. Civ. P. 13. A compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is a state-law claim. *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 988 (3d Cir. 1984) (citations omitted). "[T]he fundamental policy underlying Rule 13" is "the expeditious resolution of all controversies growing out of the

3

same transaction or occurrence or between the same parties in a single suit." *Aldens v. Packel,* 524 F.2d 38, 51 (3d Cir. 1975).

The Third Circuit follows the logical relationship test to determine whether a counterclaim is compulsory under Rule 13(a). *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir. 1978) (citing *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir. 1961)). "[A] logical relationship between claims exists where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.'" *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,* 292 F.3d 384, 389-90 (3d Cir. 2002) (quoting *Xerox*, 576 F.2d at 1059). Duplication occurs when the "claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." *Great Lakes Rubber Corp.,* 286 F.2d at 634. In such instances, "fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action." *Id.* Ms. Christian's motion to dismiss fails to address the logical relationship test, and an analysis of the test as applied here establishes that Ms. Christian's Title VII and PHRA claims involve the same factual and legal issues as Defendants' defamation counterclaim. The claims are intertwined offshoots of the same basic controversy between the parties and thus the defamation counterclaim is compulsory and Ms. Christian's motion to dismiss should be denied. Moreover, Defendants' counterclaim is mandated by judicial economy.

      **1.**    **Ms. Christian and the Defendants' Claims Involve Many of the Same Factual Issues**

Several factual issues alleged and disputed by the parties relate to Ms. Christian's allegations about Defendants' interns, including their gender, travel and work with Defendants, and religion. Ms. Christian specifically involves the interns in support of her claims of gender and

religious discrimination, alleging:

- Hodson sought to "convert" Ms. Christian to the Church of LDS. (ECF 24 at ¶ 29);
- She "felt intentionally isolated and marginalized as both a female employe [sic], and an employee who refused to commit to Defendants' LDS church. (*Id.* at ¶ 38);
- "Other activities took place that demonstrated Hodson did not value women as equal contributors and clearly saw young impressionable women as merely potential new members of his faith (to be married off to LDS members)." (*Id.* at ¶ 42);
- "Between in or about September 2020 and through 2022, Hodson met two (2) girls, ages 16 and 17, in Johnstown Pennsylvania. These two (2) girls began traveling with Hodson and the company throughout Pennsylvania, West Virginia, and California" (*Id.* at ¶¶ 43-44);
- "Hodson provided monetary consideration to these girls to entice them to continue on with Defendants entities [sic] travel affairs (including for example, paying cash for their own medical treatment)." (*Id.* at ¶ 47);
- Ms. Christian "later discovered that Hodson and other Omnis LDS employees were taking these young girls to his Latter-Day Saints Church and other LDS events." (*Id.* at ¶ 51);
- "… [Ms. Christian] became briefly involved with these girls again when they first enrolled at WVU but had no further contact with the girls until Hodson asked her to help them get a 'waiver' to live off campus so Hodson could obtain and pay for the girls' apartment off campus." (*Id.* at ¶ 54);
- "… one of these young women is now married to a member of the LDS Church, and the other young woman is attending Brigham Young University…" (*Id.* at ¶ 55).

In support of their defamation claim, Defendants in turn allege that Ms. Christian told Ms. Fahmy

- "… Hodson 'is trafficking women' and 'trafficked two young women and had [Ms. Christian] involved in it." (ECF 29, Counterclaim, at ¶ 9);
- Ms. Christian said "… 'one of them I put up in an apartment and they married off the other one to some Mormon guy.'" (*Id.* at ¶ 10);
- Further, "Ms. Christian encouraged Ms. Fahmy to review the complaint in this case." (*Id.* at ¶ 18).

Accordingly, it is clear from the pleadings that Ms. Christian's Title VII and PHRA claims involve

the same factual issues as Defendants' counterclaim: claims regarding the alleged treatment of the

5

interns in support of Ms. Christian's claims of gender and religious discrimination, and her defamatory allegations relating to same. Ms. Christian cannot dispute she was referencing the interns to Ms. Fahmy where she said Mr. Hodson "trafficked two young women and had [Ms. Christian involved in it." (ECF 29, Counterclaim, at ¶ 9). Tellingly, she also referenced the apartment with which Mr. Hodson allegedly asked her to assist, the marriage of one of the interns to a member of the LDS Church, and "encouraged Ms. Fahmy to review the complaint in this case." (Compare ECF 24 at ¶¶ 54-55, and ECF 29 at ¶¶ 9, 10, and 18). As the court in *Brooks v. Valley Day School* explained, "courts have declined to dismiss state law counterclaims… where the counterclaims go to an element of the plaintiff's discrimination suit." Civ. No. 14-5506, 2015 WL 4770759, at *4 (E.D. Pa. Aug. 11, 2015). Ms. Christian's statements to Ms. Fahmy do just that—Ms. Christian essentially echoed her allegations about the interns that she made in the Amended Complaint to Ms. Fahmy. As in Brooks, "[p]roof of the counterclaim will involve proof of the same underlying facts necessary for [the defendant] to establish a legitimate nondiscriminatory reason for Plaintiff's termination." *Id.* at *5. Because Ms. Christian uses her claims regarding the treatment of the interns to support her allegations of discrimination, the proof of the defamation counterclaim which is derived from Ms. Christian's statements regarding the same interns will involve the same underlying facts. As such, the dismissal of Defendants' counterclaim from Ms. Christian's Amended Complaint would result in the substantial duplication of efforts where the claims involve the same factual issues. *Great Lakes Rubber Corp.,* 286 F.2d at 634.

### 2. Ms. Christian and the Defendants' Claims Involve Some of the Same Legal Analysis

Ms. Christian alleges in her First Amended Complaint that Defendants treated her less favorably because of her sex or religion. In support of these assertions, Ms. Christian pleads fifteen

6

(15) averments regarding Defendants' treatment of women. (ECF 24, at ¶¶ 42-56). She specifically identified the two female interns as examples to support her claims. (*Id.*). To establish a *prima facie* case of discrimination, Ms. Christian must establish: (1) she is a member in a protected class, (2) she was qualified for her position, (3) she experienced an adverse employment action, and (4) the adverse action occurred under circumstances creating an inference of discrimination. *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003). To defend these claims, Defendants must establish their nondiscriminatory basis for the separation of Ms. Christian's employment, which will necessarily include evidence on how Defendants treat female employees and employees who are not members of the LDS Church. To prevail on the defamation claim, Defendants must establish Ms. Christian communicated false information to Ms. Fahmy about Defendants' treatment of the interns. *See* 42 Pa.C.S. § 8343; *Bagasra v. Thomas Jefferson Univ.*, 424 F.3d 336, 343 (E.D. Pa. 1999). Thus, by attempting to establish her sex and religious discrimination claims with allegations related to the interns and her involvement with them, Ms. Christian herself introduced the legal question of whether Defendants' treatment of the female interns constitutes evidence of illegal discrimination in relation to Ms. Christian's employment. (ECF 24, at ¶ 80). She then communicated to Ms. Fahmy the same allegations to support her defamatory contention that defendants are engaged in human trafficking. (ECF 24, counterclaim). As such, the veracity of Ms. Christian's legal allegations, the treatment of female employees and individuals who are not members of the LDS Church, is at issue in both the Amended Complaint and Defendants' Counterclaim.

*Garcia-Dipini v. Larry Pitt & Associates* is instructive here. No. 21-2186, 2024 U.S. Dist. LEXIS 221358 (E.D. Pa. Dec. 6, 2024). The court reviewed both the factual allegations and the legal analysis of the plaintiff's claims and the defendant's counterclaim and determined that the

7

counterclaim was permissive. (*Id.*) The court noted that the same language as used to analyze supplemental jurisdiction is applicable in a Rule 13 analysis. (*Id.* at *8). Namely, whether the claims involve the same "case or controversy" and "common nucleus of operative fact." (*Id.* at *11). In dismissing the counterclaim, the court found that "the reason for Plaintiff's termination is not integral to proving or defending against Defendant's contract-based counterclaims." (*Id.* at *22). Meaning, the defendant's breach of contract counterclaim did not require the parties to examine the same evidence as the plaintiff's discrimination claim. As demonstrated above, the same cannot be said here. Defendants' defamation claim requires the parties to examine Ms. Christian's statements and allegations about the interns and Defendants' treatment of the interns.

### 3. The Interest of Judicial Economy Weighs in Favor of Retaining Jurisdiction Over Defendants' Counterclaim

The claims at issue here are offshoots of the same basic controversy between the parties. Defendants' assertion that Ms. Christian published a statement that Defendants were trafficking young women, marrying them off to members of the LDS Church, and making her help is an offshoot of the same basic controversy between the parties: whether Ms. Christian's statements regarding the interns and Defendants' treatment of the interns are true. As noted above, the policy underlying Rule 13 is judicial economy. *See Transamerica Occidental Life Ins. Co.,* 292 F.3d at 389 (citing Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."); *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962) (stating that the purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters"); *Aldens v. Packel,* 524 F.2d 38, 51 (3d Cir.1975) (describing "the fundamental policy underlying Rule 13" as "the expeditious resolution of all controversies growing out of the same transaction or occurrence or between the same parties

in a single suit")). Applying that principle here supports a finding that Ms. Christian's claims and Defendants' counterclaim should remain in the same lawsuit.

## IV.  CONCLUSION

Defendants' defamation counterclaim is compulsory. It is so manifest that there is a "logical relationship" between that counterclaim and Ms. Christian's outrageous and bigoted averments that Defendants transported girls around the United States, contrived to have them stay in hotels with Defendants' management, and paid them for no-show jobs so that the girls, when they turned 18, could be "married off" to members of the LDS church (see Am. Compl. ¶¶ 42-55), that Ms. Christian specifically referred to her complaint when she reiterated those defamatory accusations to Ms. Fahmy in June 2024. The Court should, therefore, conclude that Defendants' counterclaim is compulsory, deny Ms. Christian's motion to dismiss that counterclaim, and schedule a Rule 16 conference so that the parties may proceed promptly to discovery.

Dated: December 16, 2024                                      Respectfully submitted,


*/s/ Matthew J. Hank*
Matthew J. Hank, Bar No. 86086
mhank@littler.com
Alexa J. Laborda Nelson, Bar No. 314652
alabordanelson@littler.com
Haley R. Norwillo, Bar No. 333731
hnorwillo@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
Telephone:   267.402.3000

Attorneys for Omnis Global Technologies, LLC, Omnis Building Technologies, LLC, OBT Bluefield, LLC, Omnis Fuel Technologies, LLC, Omnis Sublimation Recovery Technologies, LLC, and Simon Hodson

## **CERTIFICATE OF SERVICE**

I certify that on this 16th day of December 2024, a copy of Defendants' Memorandum of Law in Response to Plaintiff's Motion to Dismiss the Counterclaim was filed using the Eastern District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Ari R. Karpf, Esq.
Christine E. Burke, Esq.
KARPF, KARPF & CERUTTI, P.C.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

akarpf@karpf-law.com
cburke@karpf-law.com

*Counsel for Plaintiff*

/s/ Matthew J. Hank
Matthew J. Hank