IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE CHRISTIAN, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| OMNIS GLOBAL TECHNOLOGIES, LLC, et al., | : | NO. 2:24-cv-01319-MRP |
| | : | |
| Defendants. | : | |

### MEMORANDUM

**PEREZ, J.**                                                                                         July 10, 2025

    Plaintiff Michelle Christian commenced this action against her former employers—five West Virginia companies (collectively, "Omnis Companies") and their founder Simon Hodson. Christian's complaint sets forth eight claims against Defendants, including one for retaliation in violation of the False Claims Act ("FCA"). Defendants filed a partial motion to dismiss the FCA retaliation claim on the grounds that Christian did not plausibly allege that she engaged in protected conduct. For the reasons that follow, Defendants' partial motion to dismiss is granted.

**I.     BACKGROUND**

    Defendants are five West Virginia companies, including Omnis Global Technologies LLC, and their founder Simon Hodson. Am. Compl. ¶¶ 9-10. Michelle Christian was a Vice President of Government Relations for Omnis Global Technologies LLC from November 2020 to September 2023. *Id.* at ¶¶ 14, 75. As part of her work, Christian connected the Omnis Companies to public and private contacts for business development purposes. *Id.* at ¶ 15. Christian alleges that she faced religious and sexual harassment throughout her employment. *Id.* at ¶¶ 79-88. Hodson and other Omnis management executives pressured Christian to join the Church of Jesus Christ of Latter-

Day Saints and made demeaning comments about women's abilities and responsibilities. *Id.* at ¶¶ 29-42, 57-58.

Christian was also concerned that Hodson and the Omnis Companies made "false representations to state and federal officials" to secure government loans and grants. *Id.* at ¶ 60. Christian alleges that she "reasonably believed Defendants were altering their books to make it appear as if Defendants were in a better financial position than they actually were, and that Hodson was presenting these altered financial statements to state and federal officials to secure government funds." *Id.* at ¶ 91. Starting in June 2023, she asked Hodson to explain "certain things [that] did not make sense financially," which Hodson refused to do. *Id.* at ¶¶ 59, 61-62. Christian asked another Omnis employee, Charles Gassenheimer, about these details in late June 2023. *Id.* at ¶ 63. Gassenheimer similarly did not explain them. *Id.* at ¶ 64.

On August 30, 2023, Christian confronted Hodson by "openly objecting to his ongoing efforts to defraud government officials for investment funds." *Id.* at ¶ 65. During this hours-long conversation, Christian accused Hodson of lying to government officials in the Department of Energy and in the West Virginia state government. *Id.* at ¶ 66. Christian insisted that she would not do the same. *Id.* During this exchange, Hodson was aware that Christian had meetings scheduled with government officials in the coming weeks to secure a nearly $50 million forgivable loan. *Id.* at ¶ 67.

On or about September 5, 2023, Hodson informed Christian by text message that she would be transferred to a different Omnis Company. *Id.* at ¶¶ 71-73. On September 6, 2023, Christian wrote an email to Hodson in which she objected to Hodson's treatment of her during the August 2023 conversation. *Id.* at ¶ 74. On September 9, 2023, Christian was terminated without explanation. *Id.* at ¶¶ 75-77.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint includes enough factual allegations to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At the pleading stage, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

However, conclusory statements, as opposed to factual allegations, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Rather, courts must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Similarly, courts do not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.    DISCUSSION

The False Claims Act addresses fraud against the government by private companies or individuals. Under the FCA, a private plaintiff can bring a *qui tam* action on behalf of the government to recover losses incurred because of fraudulent claims for payment. 31 U.S.C. §§ 3729, 3730(a)-(d). The statute also protects employees against retaliatory discharge if they attempted to stop corporate fraudulence. 31 U.S.C. § 3730(h)(1).

3

In retaliation cases brought under the FCA, a plaintiff must show that (1) she engaged in protected conduct, and (2) she was discriminated against because of that protected conduct. *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d Cir. 2018); *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 194 (3d Cir. 2022). The FCA recognizes two kinds of protected conduct: "lawful acts done . . . in furtherance of [an FCA] action" or "other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). These two "prongs"—the "FCA litigation" prong and the "other efforts" prong—set two separate paths for establishing an FCA retaliation claim. *See Ascolese*, 55 F.4th at 194-95 (explaining different notice standards under "FCA litigation" and "other efforts" prongs).

Defendants move to dismiss Christian's FCA retaliation claim. Defendants' argument is two-fold. First, they argue that Christian insufficiently pled facts indicating protected conduct. Mot. to Dismiss 4-7. Second, they argue Christian failed to plausibly allege a causal connection between her conduct and her termination. *Id.* at 7-8. The protected conduct element is dispositive in this case, so we do not reach the causation element. For the reasons set forth below, Defendants' motion is granted.

    **A.**    **Protected Conduct**

In their briefs, each party directs the Court's attention to different prongs of 31 U.S.C. § 3730(h)(1). Christian argues that her conduct—specifically, her conversations with Gassenheimer and Hodson—was protected under the "FCA litigation" prong. Pl.'s Resp. to Defs.' Partial Mot. to Dismiss 9-10. On the other hand, Defendants assert that Christian did not sufficiently allege that she engaged in protected conduct under the "other efforts" prong. Mot. to Dismiss 5. The Court addresses each prong in turn.

    **1.**    **"FCA Litigation" Prong**

For a claim brought under the "FCA litigation" prong, the plaintiff's conduct must have a "nexus" to a viable FCA claim to be protected. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001). That is, the conduct must "sufficiently further[] an action filed or to be filed under the False Claims Act." *Id.* (cleaned up). Whether an employee's conduct is sufficiently related to a viable claim is a "fact specific inquiry." *Id.*

A plaintiff must cite specific concrete instances of potential fraud in her complaint to sufficiently allege protected conduct.[1] In *United States ex rel. Scheer v. Beebe Healthcare*, this Court dismissed an FCA retaliation claim where the plaintiff "allege[d] baldly that he 'reported the Medicare and Medicaid violations' to various upper-level management" without specifying the exact violations. No. CV 20-6117, 2024 WL 219395, at *13 (E.D. Pa. Jan. 18, 2024). The plaintiff's "unspecified complaints of Medicare fraud" were "broad conclusory allegations [that fell] short of showing that he engaged in protected activity." *Id.* And in *Quint v. Thar Process, Inc.*, the plaintiff alleged that his employer purchased inadequate materials to build pressure vessels with a federal grant, and that he was fired for asserting that this activity was defrauding the government. No. CIV.A. 11-116, 2011 WL 4345925, at *1-2 (W.D. Pa. Sept. 15, 2011). The court dismissed the plaintiff's retaliation claim because the claim relied solely on the plaintiff's "subjective belief that his employer [was] committing fraud." *Id.* at *15 (quoting *Mann v. Heckler & Koch Def., Inc.*, 639 F. Supp. 2d 619, 642 (E.D. Va. 2009)). The plaintiff "fail[ed] to point to a single concrete example of 'likely fraud' which he discovered, thus failing to allege a critical component of a claim under the FCA." *Id.*

---

[1] Note that this is distinct from the heightened "particularity" standard for fraud under Rule 9(b), which requires that plaintiffs identify the "'who, what, when, where, and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002). While that standard governs FCA claims, it does not govern retaliation claims brought under the FCA. *See United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 200 (4th Cir. 2018); *United States ex rel. Ruggeri v. Magee-Womens Rsch. Inst. & Found.*, No. 2:19-CV-862-NR, 2024 WL 1767514, at *3 (W.D. Pa. Apr. 24, 2024).

By contrast, in *United States ex rel. Rose v. Select Rehabilitation*, the plaintiff sufficiently pled protected conduct by pointing to specific fraudulent practices by the employer. 668 F. Supp. 3d 368, 371-72 (E.D. Pa. 2023). The plaintiff worked for a company that provided rehabilitation services, and she was terminated after refusing to administer unnecessary therapy treatments. *Id.* The complaint "allege[d] in detail thirteen patient examples of unnecessary or futile therapy services" that "present[ed] a compelling case of unnecessary treatment." *Id.* at 371. Based on the factual allegations in the plaintiff's complaint, it was "reasonable to infer that she believed Select was providing unnecessary treatments" for fraudulent purposes, and that she was terminated in retaliation for expressing concern about these treatments. *Id.* at 373. Thus, her claim had a "sufficient nexus to the FCA." *Id.*

Christian's complaint does not allege enough facts to show that her conversations with Gassenheimer or Hodson were protected conduct. Christian alleges that Omnis made misrepresentations to government officials that Christian could not understand or explain. Am. Compl. ¶¶ 61 ("Plaintiff's concerns peaked when she realized that Hodson and the Omnis Companies had made so many misrepresentations to government officials that it would be extremely difficult for Plaintiff to support the claims without further understanding so she continued to ask Hodson questions."). However, the complaint fails to identify any specific misrepresentations. Christian's complaint lacks the specific allegations of potential fraud that were found in the *Rose* complaint. Instead, like in *Quint*, Christian has not cited a "concrete example of 'likely fraud.'" *Quint*, 2011 WL 4345925, at *15.

Christian's FCA retaliation claim relies heavily on conclusory statements of misrepresentation and fraud rather than factual averments. For example, Christian alleges that the company was making "false representations" and that the company was attempting to "defraud

6

government officials for investment funds." Am. Compl. ¶¶ 60, 65. Like in *Scheer*, Christian's "unspecified complaints of . . . fraud" are "broad conclusory allegations." *Scheer*, 2024 WL 219395, at *13. Such conclusory statements "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Rather, these statements are "legal conclusion[s] couched as . . . factual allegation[s]." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Without factual allegations of specific misrepresentations, it is impossible to tell whether Christian's complaint advanced a viable FCA claim, or if it instead relied on a subjective belief of fraud. Simply put, given that the determination of protected conduct is a "fact specific inquiry," Christian has not alleged enough facts to support that determination. *Hutchins*, 253 F.3d at 187. As a result, Christian's complaint fails to plausibly allege protected conduct under the first prong of 31 U.S.C. § 3730(h)(1).

### 2. "Other Efforts" Prong

The Third Circuit has not identified a clear test for whether a plaintiff's conduct is protected under the "other efforts" prong. Congress amended the statute in 2009 to include the "other efforts" prong, indicating legislative intent to expand protections for FCA retaliation. *See Ascolese*, 55 F.4th at 191 (describing the amendment as "expand[ing] the universe of protected conduct"). However, the scope of those expanded protections is unclear. Other circuits have required that the plaintiff's conduct be based on an "objectively reasonable" belief that the employer has committed or is about to commit an FCA violation. *See, e.g.*, *Singletary v. Howard Univ.*, 939 F.3d 287, 296 (D.C. Cir. 2019); *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 201-02 (4th Cir. 2018). The Third Circuit has not expressly adopted or rejected this standard. *See Hall v. Abington Mem'l Hosp.*, No. CV 22-2429, 2023 WL 6216526, at *4 (E.D. Pa. Sept. 25, 2023).

7

Nevertheless, this Court has described the "objective reasonableness" standard as a "workable, practical aid" to determine the limits of the "other efforts" prong. *Id.*

A complaint must cite specific violations of statutory, regulatory, or contractual requirements to meet the "objective reasonableness" standard. *Id.* at *5-7. Advancing an "unclear theory of FCA retaliation . . . without any factual averments to support it" is insufficient. *Smith v. Ideal Concepts, Inc.*, No. 5:23-CV-2166, 2023 WL 8188446, at *4 (E.D. Pa. Nov. 27, 2023) (dismissing an FCA retaliation complaint that alleged an employer's misuse of Medicare/Medicaid funds but did not identify any violations of specific requirements). *Contrast Hall*, 2023 WL 6216526, at *5-8 (dismissing an FCA retaliation claim where the complaint failed to explain how the employer's conduct—a hospital's improper use of recalled machines—violated any requirements), *with Ascolese*, 55 F.4th at 192 (finding plaintiff met the "objective reasonableness" standard where the complaint identified specific violations in a construction project including the type of concrete used and absence of steel reinforcements in walls). Absent references to specific violations, a complaint fails to show how "it was objectively reasonable for the plaintiffs to believe that" their employer committed an FCA violation. *Hall,* 2023 WL 6216526, at *8.

For the same reasons that Christian insufficiently pleads protected conduct under the first prong, Christian fails to plead enough facts to show that her conduct was protected under the second prong. Christian's complaint does not identify specific violations of statutory, regulatory, or contractual requirements. Without identifying such violations, Christian fails to connect the Defendants' conduct to a plausible theory of fraudulence. As a result, Christian has not shown that it was objectively reasonable for her to suspect that Omnis Enterprises committed or was about to commit an FCA violation. Christian's complaint is analogous to the plaintiffs' complaints in *Smith*

and *Hall*, which did not identify specific violations. The vagueness of Christian's complaint falls far short of the specificity of the *Ascolese* complaint, which plausibly suggested fraud.

More generally, the complaint's allegations do not show that Christian's conduct was based on her "objectively reasonable" belief of a potential FCA violation. The fact that "certain things did not make sense financially" does not give rise to a plausible inference of fraud. Am. Compl. ¶ 59. Many non-fraudulent reasons might explain why Christian did not understand the financial statements. And Christian's references to "false representations" amount to only conclusory allegations, which cannot be taken as true when analyzing a Rule 12(b)(6) motion. *Id.* at ¶ 60. Similarly, the statement that Christian "reasonably believed Defendants were altering their books" is a conclusory allegation. *Id.* at ¶ 91. Drawing all reasonable inferences in favor of the plaintiff, the Court finds that Christian's complaint insufficiently alleges that her belief was objectively reasonable. Therefore, Christian's conduct was not protected under the "other efforts" prong of 31 U.S.C. § 3730(h)(1).

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss is granted. The retaliation claim is dismissed without prejudice. An appropriate order follows.