**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHELLE CHRISTIAN, | |
| Plaintiff, | Civil Action No. 2:24-cv-01319 |
| v. | |
| OMNIS GLOBAL TECHNOLOGIES, LLC; OMNIS BUILDING TECHNOLOGIES, LLC; OBT BLUEFIELD, LLC; OMNIS FUEL TECHNOLOGIES LLC D/B/A OMNIGEN; OMNIS SUBLIMATION RECOVERY TECHNOLOGIES, LLC; AND SIMON HODSON, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR PARTIAL ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF RELEVANT FACTS ........................................................... 1

      A.    Ms. Christian Asserts Omnis Fired Her On September 9, 2023 Because Of Her Sex and Religion And She Seeks Reinstatement, Back Pay, And Front Pay .................................................................................................................... 1

      B.    This Spring, In The Course Of Written Discovery, Omnis Learned Ms. Christian Sent 392 Emails, Many With Multiple Attachments, From Her Work Email Account To Various Personal Email Accounts Shortly Before And After September 9, 2023 .............................................................. 2

      C.    Ms. Christian Will Not Consent To Omnis Filing An Amended Answer Asserting The After-Acquired Evidence Defense Based On The 392 Purloined Emails .............................................................................. 6

III.   LEGAL ARGUMENT ........................................................................................ 7

      A.    Unless Exceptional Circumstances Exist, The Court Should Grant Omnis' Motion To Amend ................................................................................... 7

      B.    Exceptional Circumstances Do Not Exist Here ...................................... 8

IV.   CONCLUSION ................................................................................................. 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bechtel v. Robinson*,
    886 F.2d 644 (3d Cir. 1989)......................................................................................8

*Bos. v. Blue Cross & Blue Shield of Kansas, Inc.*,
    No. 09-2032, 2009 WL 10675755 (D. Kan. Nov. 10, 2009) ...................................10

*Bullock v. Balis & Co.*,
    No. 99-748, 2000 WL 1858719 (E.D. Pa. Dec. 19, 2000)........................................8

*EEOC v. Morgan Stanley & Co.*,
    No. 01–CV–8421, 2002 WL 31778779 (S.D.N.Y. Dec. 11, 2002).........................10

*Ellmann v. Amsted Rail Co.*,
    No. 2:17-cv-361, 2018 WL 1725494 (N.D. Ind. Apr. 9, 2018)................................9

*Hudson v. L&W Supply Corp.*,
    No. H-08-2471, 2009 WL 10693829 (S.D. Tex. June 18, 2009)............................10

*Kiser v. Gen. Elec. Corp.*,
    831 F.2d 423 (3d Cir. 1987).....................................................................................8

*Long v. Wilson*,
    393 F.3d 390 (3d Cir. 2004).....................................................................................7

*Miller v. Beneficial Mgmt. Corp.*,
    844 F. Supp. 990 (D.N.J. 1993) ...........................................................................8, 9

*Paneto v. CWork Sols.*,
    Civ. No. 1:18-cv-1794, 2020 WL 7027588 (M.D. Pa. Nov 30, 2020) ....................8

*Savage v. Temple Univ.*,
    No. CV 19-6026-KSM, 2020 WL 5602651 (E.D. Pa. Sept. 18, 2020) ....................9

*Smith v. University of Scranton*,
    No. 3:16-CV-02430, 2017 WL 5991733 .............................................................9, 10

*Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*,
    No. 12-3363, 2013 WL 5467962 (E.D. Pa. Sept. 27, 2013)......................................7

*Tyco Fire Products LP v. Victaulic Co.*,
    777 F. Supp. 2d 893 (E.D. Pa. 2011) .......................................................................9

ii

**Other Authorities**

Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1271 & n. 64 (4th ed.) (2025) ...............................10

## I.     INTRODUCTION

Defendants Omnis Global Technologies, LLC, ("OGT"), Omnis Building Technologies, LLC, ("OBT"), OBT Bluefield, LLC, ("OBT Bluefield"), Omnis Fuel Technologies LLC D/B/A Omnigen[1] ("OFT"), and Omnis Sublimation Recovery Technologies, LLC, ("OSRT"), (collectively "Omnis") and Defendant Simon Hodson move under Federal Rule of Civil Procedure 15 to amend their Answer to Plaintiff Michelle Christian's First Amended Complaint. Defendants wish to assert the defense of after-acquired evidence.

The default rule is that leave to amend should be freely granted. Where, as here, defendants learn during discovery that the plaintiff misappropriated their confidential information, the pleadings have not closed, and there is no scheduling order, the Court does not confront the exceptional case in which leave to amend should be denied. Therefore, Defendants respectfully request that the Court grant leave to amend.

## II.     STATEMENT OF RELEVANT FACTS

### A.     Ms. Christian Asserts Omnis Fired Her On September 9, 2023 Because Of Her Sex and Religion And She Seeks Reinstatement, Back Pay, And Front Pay

Ms. Christian alleges a scenario in which she began working on November 16, 2020, as the Vice President of Government Relations, reporting directly to OGT President Simon Hodson. (ECF 24, at ¶¶ 14, 18). She claims to have been employed by "Defendants" generally. (ECF 24, at ¶ 38). Ms. Christian alleges she was responsible for "connecting all Defendant Omnis companies with private and public contacts to develop all Defendant Omnis' businesses." (*Id.* at ¶ 15). Ms. Christian claims (among other things) that, during the approximately four years she worked as Vice President of Government Relations, she was subject to sex and religious

---

[1] Omnis Fuel Technologies, LLC is no longer using "Omnigen." Omnis Fuel Technologies, LLC is now doing business as "Omnis Energy, LLC."

discrimination, plus retaliation, in violation of Title VII and the Pennsylvania Human Relations Act. (ECF 24, at ¶¶ 79-88, 131-34).

In Ms. Christian's recitation of events, matters began to come to a head on August 30, 2023, when she accused Mr. Hodson of unsavory business practices. (ECF 24, at ¶¶ 65-67). In response, according to Ms. Christian, Mr. Hodson tried to "minimize Plaintiff's complaints by trying to appeal to Plaintiff as a female, and making an actual advance to her saying: 'hold my hands and look me in the eyes and tell me you believe me.'" (ECF 24, at ¶ 68). After that, according to Ms. Christian, her relationship with Omnis rapidly unraveled. On September 5, 2023, Ms. Christian alleges, Mr. Hodson sent Ms. Christian a text message broaching possible "changes" in her "employment with the Omnis companies." (ECF 24, at ¶ 73). According to Ms. Christian, Omnis fired her four days later, on September 9, 2023, via an email in which Omnis's General Counsel told her to "immediately cease and desist work for any of the Omnis companies." (ECF 24, at ¶¶ 75-77).

Ms. Christian asserts her termination was because of her sex and her religion, and because of a retaliatory motive (*see* ECF 24, at ¶¶ 79-88, 131-34), and thus violates Title VII and the PHRA. She seeks (among other things) reinstatement, back pay, and front pay. (ECF 24, at Wherefore clause).

> **B.    This Spring, In The Course Of Written Discovery, Omnis Learned Ms. Christian Sent 392 Emails, Many With Multiple Attachments, From Her Work Email Account To Various Personal Email Accounts Shortly Before And After September 9, 2023**

On November 4, 2024, Ms. Christian filed an Amended Complaint containing the allegations discussed above and a claim under the False Claims Act ("FCA"). (ECF 24). On July 10, 2025, the Court dismissed the latter claim. (ECF 37-38). On November 18, 2024, Defendants filed their Partial Answer, which addressed all claims except the now-dismissed FCA claim and

asserted a counterclaim for defamation. (ECF 29). Ms. Christian moved to dismiss the defamation counterclaim. (ECF 31). That motion is briefed and awaits the Court's ruling. (ECF 36).

On February 26, 2025, counsel held a Rule 26(f) conference and agreed to begin discovery on the claims that were not then subject to a motion to dismiss. The parties have since exchanged, and have begun responding to, interrogatories and document requests. The pleadings are not yet closed, there has been no scheduling conference under Federal Rule of Civil Procedure 16, and the Court has issued no scheduling order.

Starting in April 2025, while looking for documents responsive to Ms. Christian's discovery requests, Omnis learned that, beginning on September 5, 2023, **and continuing after the General Counsel's admonitions to return company property and to cease work**, Ms. Christian sent 392 emails, many with multiple attachments, from her work email account to various personal email accounts. Most of these 392 emails and attachments, in Omnis' assessment, contain trade secret or confidential information, including troves of detailed business plans, marketing materials and investment proposals, technical data related to Omnis' proprietary processes, marketplace analyses, detailed financial projections, and confidential business contracts. Here is a sample of those stolen emails and attachments containing Omnis' trade secrets or confidential information:

- On September 6, 2023, Ms. Christian forwarded from her Omnis email to her personal email account an exchange between Omnis leadership with an attached "2021.11 – Omnis Energy Investor Deck," containing an investor-facing marketing presentation detailing Omnis' proprietary carbon-neutral technologies and processes, marketplace analysis, viability analyses and value propositions, business strategies and planned operational phases, information about specific Omnis projects and timelines, and projected financial data. Just minutes later, she sent herself similar slide decks named "2021.11 - Omnis Energy (Executive Summary)" and "2021.04 – Omnis Energy Investor Deck" containing the same types of confidential information.

- On September 8, 2023, Ms. Christian forwarded from her Omnis email to her personal email account a PowerPoint file named "OBT-Bluefield Business plan 4.19.21." That 57-page business plan includes a "Manufacturing Overview" section detailing Omnis' proprietary building technologies with detailed manufacturing blueprints and process-related data; a "Competition Comparison" section analyzing the market, competitor data, and Omnis' competitive advantages; a "Facility Timeline" section detailing Omnis' operational phases; a "Sales & Marketing plan - Strategies" section detailing Omnis partner-facing strategies, messaging, sales funnels, and launch phases; and a "Current Feasibility" section outlining Omnis' production and value projections.

- On September 8, 2023, and again on September 10, 2023, Ms. Christian forwarded from her Omnis email account to her personal email account an excel file named "Master To Do List.xlsx." This 15-sheet excel file details responsibilities assigned to various Omnis staff members, including information about ongoing Omnis business needs and issues pertaining to certain projects; project names, locations, and business relationship contacts; task completion strategies; and estimated project timelines.

- On September 8, 2023, Ms. Christian twice forwarded from her Omnis email account to her personal email account two emails between Omnis leadership related to financing and investment for a particular Omnis project, with attached "Financing Package" and "Investment Package" files. Those 26- and 35-page files, respectively, each contain confidential financing and investment proposals including comprehensive reports about Omnis' proprietary technologies, its operational strategies and innovative manufacturing processes, its marketplace strategies, and detailed cash flow analyses, value propositions, and other financial data.

- On September 8, 9, and 10, 2023, Ms. Christian three times forwarded from her Omnis email account to her personal email account a PowerPoint file named "OBT Business plan 2.25.21 (1).pptx." That 27-page business plan includes, yet again, detailed confidential information about Omnis' proprietary building technologies; its operational plans, including staffing and training techniques, manufacturing blue prints, and launch phases; its marketing strategies; its competitive strategies, including collected data and assessments of Omnis' competitors and how Omnis' solutions fit into the market; and detailed financial data.

- Between September 6 and 10, 2023, Ms. Christian forwarded from her Omnis email account to her personal email account dozens of confidential contracts, term sheets, and memoranda of understanding between Omnis and numerous business partners. Those agreements detail, among other things, the specific terms of Omnis' business

4

relationships, those business partners' unique specifications and needs, Omnis' operational plans, and the financial terms of those business relationships.

- Between September 8 and 10, 2023, Ms. Christian forwarded from her Omnis email account to her personal email account dozens of Omnis project proposals, including detailed communications with current or prospective clients and business partners about Omnis' business and operations plans, investment strategies, and value propositions.

- Between September 8 and 10, 2023, Ms. Christian forwarded from her Omnis email to her personal email dozens of internal and client/partner communications containing extremely detailed technical data related to Omnis' processes, manufacturing blueprints and process diagrams, project specifications and plans, and estimated deliverables.

- On September 9, 2023, Ms. Christian forwarded from her Omnis email account to her personal email account a 21-page "Confidential" client-facing presentation PowerPoint. That PowerPoint contains, among other things, confidential information about Omnis' proprietary technologies and research and development, its competitive advantages and marketplace analyses, detailed information about Omnis' innovative processes, and its customized business proposal.

- On September 10, 2023, Ms. Christian forwarded from her Omnis email account to her personal email account a document named "Omnis Sublimation Recovery Technology Request for Funding." That document, used on a confidential basis for purposes of seeking investment, contains detailed information regarding, among other things, Omnis' proprietary technology for extracting various metals from coal waste, location strategies, operational costs and projected values, proprietary blueprints and diagrams stamped "Proprietary and Confidential," and "CONFIDENTIAL" data regarding element concentrations.

- On September 10, 2023, Ms. Christian emailed from her Omnis account to her personal email account a 23-page file named "OMNIS ENERGY WORKING DOCS – Gov Affairs and Funding Initiatives," setting out in granular detail Omnis' strategies for developing and managing federal, state and local government relationships for purposes of obtaining funding. Among other things, the document details Omnis' "Four-Fold Government Affairs Strategy," including exactly how it plans to develop and maintain political relationships and obtain funding.

- On September 10, 2023, Ms. Christian forwarded from her Omnis email account to her personal email account an email with an attached 11-sheet excel file titled "OBT Bridgeport CIBU Model 8 August 2021," detailing, among other things, Omnis' sales and financial projections, including expected revenues, licensing,

commissions, equipment, material, and other operating expenses, pricing, production quantities, and capital values. In short, this spreadsheet sets out a comprehensive picture of Omnis' production capacities and financial projections.

- On September 10, 2023, Ms. Christian forwarded from her Omnis email account to her personal email account an email between Omnis and its prospective business partner with three attached documents: a business plan setting out in detail Omnis' proprietary solutions, its competition strategy and marketplace analysis, its manufacturing processes, sales and marketing strategies, and projected values; a 13-sheet Excel file detailing Omnis' business model, including ten-year financial projections with detailed accounting data, operational plans and diagrams, cost and pricing information, and production projections; and a proposed term sheet reflecting the financial details of Omnis' proposed business relationship.

In Omnis' view, when Ms. Christian's relationship with Omnis soured after her August 30 conversation with Mr. Hodson, she abused her position, and Omnis' trust, by engaging in a colossal data theft. Omnis has filed an arbitration against Ms. Christian because of that data theft.[2] *A fortiori*, had Omnis contemporaneously known of Ms. Christian's data theft when it began on or about September 5, 2023, it would have fired her. Omnis' newly acquired knowledge of Ms. Christian's data theft is an insuperable barrier to Omnis ever employing Ms. Christian again.

### C. Ms. Christian Will Not Consent To Omnis Filing An Amended Answer Asserting The After-Acquired Evidence Defense Based On The 392 Purloined Emails

Omnis now wishes to file the attached Amended Answer to the First Amended Complaint (*see* Exh. A), in which it asserts the after-acquired evidence defense. On July 2, 2025, Omnis' counsel wrote to Ms. Christian's attorney: "we would like to assert an after-acquired evidence affirmative defense based on the facts asserted in the Arbitration Demand. Do we have your consent to amend the answer to include this affirmative defense, or should we file a motion? Please

---

[2] Ms. Christian has requested the Court of Common Pleas for Bucks County to enjoin that arbitration, on the ground that it could have been brought in Bucks County and is thus covered by a consent decree entered by the Court of Common Pleas. Ms. Christian's request remains under advisement.

let us know." (Exh. B, at 2.) We followed up on July 9, 2025. (*See* Exh. B, at 1.) Later that day,

we received our answer:

> I have not seen a shred of evidence supporting any after acquired evidence defense. It is illegal to terminate an employee for preserving evidence of a potential crime and complying with local, state or federal investigations into such crimes. You also can't claim breach of a contractual provision which is void against public policy.
>
> Please file your Motion.

(Exh. B, at 1.)

Defendants now seek the Court's permission to amend their affirmative defenses to add

one paragraph, at ¶ 8, p. 13 of the pleading:

> Plaintiff's claims are subject to the doctrine of after-acquired evidence because, beginning on September 5, 2023, and continuing after a September 9, 2023, directive to return company property and to cease work, Plaintiff improperly sent 392 emails, many with multiple attachments, from her work email account to various personal email accounts. Defendants were unaware of the alleged misconduct at the time of Ms. Christian's termination, that misconduct was of such severity to justify discharge, and it would, in fact, have led to Ms. Christian's discharge. Plaintiff's misconduct is also an insuperable barrier to her reinstatement. As such, any remedy or recovery to which she may have been entitled, inclusive of front pay and reinstatement, must be denied or reduced accordingly.

## III.    LEGAL ARGUMENT

### A.    Unless Exceptional Circumstances Exist, The Court Should Grant Omnis' Motion To Amend

Federal Rule of Civil Procedure 15(a) instructs courts to freely grant leave to amend a

pleading "when justice so requires." Fed. R. Civ. P. 15(a); *Long v. Wilson*, 393 F.3d 390, 400 (3d

Cir. 2004). Leave to amend should be granted absent "undue delay, bad faith, dilatory motive,

prejudice, and futility." *Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*, No. 12-3363, 2013 WL

5467962, at *2 (E.D. Pa. Sept. 27, 2013) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1434 (3d Cir. 1997)).

Of those factors, prejudice is the most important: "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Miller v. Beneficial Mgmt. Corp.*, 844 F. Supp. 990, 999 (D.N.J. 1993) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).  Importantly, the non-moving party bears the burden of proving that it will be prejudiced if leave to amend is granted.  *Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 428 (3d Cir. 1987).  Further, "the non-moving party must do more than merely claim prejudice; it must show that it [would be] unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel*, 886 F.2d at 652 (quotations omitted).

In sum, "leave should be denied only in certain exceptional circumstances." *Miller*, 844 F. Supp. at 998 (citing *Foman v. Davis*, 371 U.S. 178, 182  (1962)).

## B.    Exceptional Circumstances Do Not Exist Here

Under the doctrine of after-acquired evidence, "the defendant must establish (1) that the employee committed misconduct, and (2) that the misconduct was so severe that, had the employer known about it at time of actual discharge, it would have in fact terminated the employee for that reason alone." *Paneto v. CWork Sols.*, Civ. No. 1:18-cv-1794, 2020 WL 7027588, at *10 (M.D. Pa. Nov 30, 2020) (citing *McKennon v Nashville Banner Publ'g Co*., 513 U.S. 352, 359-60, 362-63 (1995)).  "If a defendant proves that the doctrine applies, reinstatement and front pay become inappropriate, and absent extraordinary circumstances, backpay is limited to the period of time between the unlawful discharge and the date the new information was discovered." *Id.*; *see also Bullock v. Balis & Co.*, No. 99-748, 2000 WL 1858719, at *9 (E.D. Pa. Dec. 19, 2000) (limiting plaintiff to backpay "from the date of the allegedly unlawful employment action . . . to the date on which [the defendant] discovered his misconduct").

The affirmative defense Defendants wish to assert pleads facts plausibly suggesting each of these elements.  Hence Defendants' desire to develop this evidence through discovery and present it to the jury at trial.

Judging by the email from Ms. Christian's counsel on July 9, she believes amendment should be denied because it is futile.  "Assertions that amendments to answers are futile are . . . reviewed under the 'motion to dismiss' standard." *Miller*, 844 F. Supp. at 1001.  A juxtaposition of the defense Defendants wish to plead with the elements of the after-acquired-evidence doctrine, however, shows Defendants meet *Twombly*/*Iqbal* pleading standards.[3]  Further, courts routinely permit defendants to assert the after-acquired evidence defense where, as here, the defendant predicates the defense on after-acquired evidence of the plaintiff's theft.

Illustrating the point is *Smith v. University of Scranton*, No. 3:16-CV-02430, 2017 WL 5991733, at *4 (M.D. Pa. Dec. 4, 2017), where the court granted leave to amend.  In *Smith*, the defense of after-acquired evidence was based (among other things) on allegations the plaintiff "forwarded confidential information to her personal email account for personal use" and "accessed the University computer system after her termination to obtain information related to University business for her personal use."  *Id.* at *1.  *Smith* is analogous to this case.  Further, it is no outlier. *See Ellmann v. Amsted Rail Co.*, No. 2:17-cv-361, 2018 WL 1725494, at *3 (N.D. Ind. Apr. 9, 2018) ("Amsted has pled that Ellmann engaged in wrongdoing by misappropriating confidential personnel or other material, which would have led to her termination.  The proposed amendment

---

[3] There is a split in authority as to whether the *Twombly*/*Iqbal* plausibility standard applies to affirmative defenses other than waiver, estoppel, and unclean hands.  The roots of the split are discussed in *Tyco Fire Products LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 898 (E.D. Pa. 2011).  Most district judges in the Third Circuit seem to have concluded that the *Twombly*/*Iqbal* plausibility standard *does not* apply to affirmative defenses.  *See Savage v. Temple Univ.*, No. CV 19-6026-KSM, 2020 WL 5602651, at *5 (E.D. Pa. Sept. 18, 2020) (collecting cases).  But the Court need not reach that issue here, because Defendants have pleaded facts plausibly suggesting the elements of the after-acquired evidence defense.  Even if *Twombly*/*Iqbal* applied, Defendants have cleared that hurdle.

is not clearly futile. Therefore, it would be improper to deny Amsted leave to amend its answer."); *Bos. v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 09-2032, 2009 WL 10675755, at *1-2 (D. Kan. Nov. 10, 2009) (granting leave to amend answer to include after-acquired evidence defense based on misappropriation of documents, and rejecting the plaintiff's futility argument); *Hudson v. L&W Supply Corp.*, No. H-08-2471, 2009 WL 10693829, at *1-6 (S.D. Tex. June 18, 2009) (District court granted leave to amend answer to include after-acquired evidence defense based on theft of company information even though so doing required the court to amend the scheduling order).

Therefore, Defendants respectfully request that the Court do here what the *Smith* court did: grant leave to amend the answer to include the affirmative defense of after-acquired evidence.[4]

---

[4] It is not obvious that after-acquired evidence is an affirmative defense that must be pleaded in an answer. *See EEOC v. Morgan Stanley & Co.*, No. 01–CV–8421, 2002 WL 31778779, at *1 (S.D.N.Y. Dec. 11, 2002) (holding after-acquired evidence was not necessarily an affirmative defense and defendant did not need to amend its answer to assert it). But the majority view is that after-acquired evidence is indeed an affirmative defense. *See* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1271 & n. 64 (4th ed.) (2025). We assume, out of caution and for present purposes only, that the majority view is correct.

## IV.    CONCLUSION

We end where we began.  The baseline principle under Rule 15(a) is that courts must freely grant leave to amend a pleading "when justice so requires."  There are exceptional cases where leave to amend should be denied, but this is not one of them.  Defendants' amended pleading would contain facts plausibly suggesting the elements of the after-acquired evidence defense, the pleadings are not closed, and there has not even been a scheduling order.  Accordingly, Defendants respectfully request that the Court grant their motion and accept as filed the Amended Answer attached to this motion package as Exhibit A.

Dated: July 15, 2025

Respectfully submitted,

/s/ Matthew J. Hank
Matthew J. Hank, Bar No. 86086
mhank@littler.com
Alexa J. Laborda Nelson, Bar No. 314652
alabordanelson@littler.com
Haley R. Norwillo, Bar No. 333731
hnorwillo@littler.com
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
Telephone:    267.402.3000
Facsimile:      267.402.3131
Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of July 2025, a copy of the Defendants' Brief in support of their Motion To Amend Their Partial Answer to First Amended Complaint and Counterclaim was filed using the Eastern District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Ari R. Karpf, Esq.
Christine E. Burke, Esq.
KARPF, KARPF & CERUTTI, P.C.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

akarpf@karpf-law.com
cburke@karpf-law.com

*Counsel for Plaintiff*


*/s/ Matthew J. Hank*
Matthew J. Hank