# Exhibit B



Erin McVicar <erin@karpf-law.com>

---

## Christian_Omnis Six Points of Follow Up

**Christine Burke** <cburke@karpf-law.com>  Mon, Aug 11, 2025 at 4:36 PM
To: "Norwillo, Haley" <HNorwillo@littler.com>
Cc: "Hank, Matthew" <MHank@littler.com>, "Laborda Nelson, Alexa" <ALabordaNelson@littler.com>, Erin McVicar <erin@karpf-law.com>

Hi Haley -

I apologize for the delay, but I did not want to get back to you until I had authority from my client on a central point.

**1.) After Acquired Evidence Defense**

I certainly dont want your clients or your office to spin your wheels on an affirmative defense that will not apply at this trial.

My client stipulates to limit her back pay damages up until April 1, 2025 (and of course will not be seeking front pay or reinstatement at trial). This is the date your client claims to have first discovered evidence tending to support its after-acquired evidence defense. "Starting in April 2025, while looking for documents responsive to Ms. Christian's discovery requests, Omnis learned that, beginning on September 5, 2023, and continuing after the General Counsel's admonitions to return company property and to cease work, Ms. Christian sent 392 emails, many with multiple attachments, from her work email account to various personal email accounts." Dkt. Entry No.: 39-1 (at page 2). The demand for Arbitration clarifies this was in "April 2025." Demand for Arb., at p. 30, para 20. (Though "April" could mean any date in April, we will assume April 1st as a means of compromise).

Assuming, *arguendo*, that Omnis can establish that Ms. Christian committed any type of data theft (which we vehemently disagree), Ms. Christian can claim a Title VII backpay award up until the date Omnis discovered the alleged data theft. Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072, 1073-1074 (3d Cir. 1995); *and see* EEOC v. Rose Casual Dining, L.P., No. 02-7485, 2004 U.S. Dist. LEXIS 4335, at *33 (E.D. Pa. Mar. 5, 2004)("With respect to backpay, if Defendant proves that it would have terminated the Plaintiff's employment for the reason revealed by the after-acquired evidence, back pay should run from discharge to the time that the wrongdoing was discovered.").

Please confirm your office will withdraw the after acquired evidence defense given this stipulation. We are happy to memorialize a formal stipulation beyond my email *herein*. Otherwise, we will need to file a Motion with Court to strike this defense or move under Rule 56 to have it dismissed. *See e.g.* Kierl-Allen v. The Salvation Army Ark./Oklahoma Div., No. CIV-18-1140-D, 2021 U.S. Dist. LEXIS 188182, at *28-29 (W.D. Okla. Sep. 30, 2021)("Plaintiff's stipulation, that she "does not seek damages for wage loss for the period after July 30, 2018," is equally applicable to this defense. Further, Plaintiff stipulates that she does not seek front pay or reinstatement. Consequently, she has stipulated that she is not seeking reinstatement, front pay, or backpay for the period after the date TSA discovered that her responses on her job application were untrue. Therefore, the after-acquired evidence defense would have no bearing on either liability or damages; there is thus no reason for TSA to advance it at trial. Summary judgment on this defense is granted.")

**2.) Metadata**

As to the metadata, I cannot ignore that your office has a separate action pending in arbitration (and Bucks) over these exact same emails. Any ability to proceed with those claims will be determined either in Bucks, in arbitration (or both), as will all discovery related issues.

Your argument for metadata below indicates:

"the metadata will be needed for Omnis' after-acquired evidence defense. As you've seen from the arbitration papers, your client improperly took more than 300 documents of Omnis' confidential or trade secret information. The metadata for the confidential or trade secret documents will likely show what your client did with these documents, whether she further disseminated them and when she accessed them. Your improper PDF production does not provide Omnis with any of this highly relevant information."

This defense is no longer at play in this case.

That leaves your last concern purportedly over authenticity. If there are *any* concerns over the emails' authenticity, your client has full access to the same exact emails and can produce the same strings.*See.e.g. Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dept of Homeland Sec.*, 255 F.R.D. 350, 360 (S.D.N.Y. 2008) (declining to order production of metadata where requesting party failed to show that metadata would "yield useful information beyond that which the Plaintiffs already have"); Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 U.S. Dist. LEXIS 188853, at *12 (M.D. Pa. Oct. 31, 2019)("many of these records, if they exist in an ESI format, would remain within the possession, custody, and control of the defendant on its proprietary e-mail system.").

The entire purpose of metadata is to permit a party "to identify the provenance of each document and put it into its proper context.'" Palmer v. York Cty., No. 1:20-CV-539, 2022 U.S. Dist. LEXIS 174164, at *20 (M.D. Pa. Sep. 26, 2022) (citing Lawson, No. 1:17-CV-1266, 2019 U.S. Dist. LEXIS 188853, 2019 WL 5622453, at *6 (quoting City of Colton v. Am. Promotional Events, Inc., 277 F.R.D. 578, 586 (C.D. Cal. 2011)). Many of the cases where Courts permit discovery of metadata is where the requesting party is not the owner of the emails at hand and does not have direct access to the email server. This is simply not the case here.

You make sweeping accusations about my client altering emails (**with no actual proof or examples**), and of "spoliation" claiming my client deleted emails, though your office was acutely aware there were many emails not produced in our first round of exchange, as we expressly agreed to truncated discovery strictly as to what wa relevant to the Title VII claims (and not the FCA claims).

If there is a specific email that you believe the metadata would be needed for, unrelated to your ability to pursue claims outside this lawsuit or unrelated to the after acquired evidence defense, please advise. *See e.g.* Cochran v. Caldera Med., Inc., No. 12-5109, 2014 U.S. Dist. LEXIS 55447, at *12 (E.D. Pa. Apr. 22, 2014)(denying request for metadata without prejudice, until the moving party "know[s] what metadata is needed for a particular document").

Your clients have tried to multiply these proceedings by filing motions to transfer venue to make the litigation more cumbersome on my client in a remote state (then withdrew that Motion); now they are trying to seek metadata for a small subset of emails they themselves possess.

My client never claimed in the Bucks matter she had "no omnis information;" in fact, she admitted that she had provided information to government agencies in connection with federal or state investigations into Omnis and thus any consent order was subject to those disclosures. (See Consent Degree, para 4).

**3.) Once a Rule 16 Order is entered**, we will work with you on a proposed R. 26 Report.

**4.) As to a Confidentiality Agreement**, we disagree there is a need for any "robust" language to account for trade secret violations etc., as those claims are not pending in this Court and the after acquired evidence defense is no longer at play.

**5.) Prior Meet and Confer Areas of Discovery Amongst the Parties**

Resolved Subject to Plaintiff's Confirmation

- Plaintiff is not withholding any responsive documents based on her general objections.  **Correct only as to the currently pending claims; all of my emails have been pretty explicit that if a document was only responsive to the False Claims Act claim, it was not produced, as the Parties agreed to truncated discovery.  I stated this in our latest meet and confer call.**
- The universe of alleged "bad actors" is Simon Hodson, Jonathan Hodson, Blake Stephens, Mat Hart, Doug Quezada, and Richard Hulme, based the answers to Defendants' Interrogatories No. 2-5.  **Based upon current responses yes; however, if this changes as the Defense produces additional documents or sits for depositions, she will need to amend.**
- The parties have agreed not to log privileged or work-product doctrine protected communications after September 19, 2023, and Plaintiff has withheld no documents based on attorney-client privilege.  **As stated, my firm was not retained until March of 2024. There were no discoverable documents withheld on the basis of attorney client privilege or work product.  Any redactions (I believe only one) in our production are simply privileged communications of our client providing information for discovery in this action with privileged communications (we also redacted banking account/balances/sensitive social security numbers related to our client).**
- As to Littler's involvement, I only confirmed that I would not ask Littler to log post litigation communications related to this case.  If Littler provides representation to Omnis for all purposes, such as unemployment, the EEOC, I am not in a position to know if it is withholding otherwise discoverable documents on the basis privilege or work product (or involved in incidents generally if other employees made responsive internal complaints following 9/9/23).

<u>Resolved, Subject to</u> Defendants' amending in a timely fashion:

- Plaintiff's Interrogatory No. 8: Plaintiff is seeking information related to executive level employees and their assistants.
- Plaintiff's Interrogatory No. 10: Plaintiff is requesting responsive information related to Simon Hodson, Jonathan Hodson, and Kelli Bradshaw.
- Plaintiff's Interrogatory No. 11: Plaintiff will modify this Interrogatory to seek responsive complaints received by Simon Hodson, Jonathan Hodson, or Blake Stephens.
- Plaintiff's Interrogatory No. 13(c): Plaintiff will limit this request to Human Resources.
- Plaintiff's Interrogatory No. 14(b): Plaintiff will limit this Interrogatory to executive level employees and their assistants.

<u>Unresolved</u>

Defendants' signed R. 33 **verification**, is still outstanding.

Defendants' Responses to Supplemental Interrogatories and Demands.  I addressed the improper objections lodged thereon on July 23rd and 24th.  Please confirm if your client is going to maintain its objection to these, as we intend to file a Motion to Compel.

I look forward to your clients' supplemental answers by Friday, as we had our meet and confer weeks ago and I was advised they would work to resolve these issues.  I haven't heard anything back.

 6.) Intent to Amend:

I have been working diligently to work with my client to determine the ability (factually) to amend the Complaint for the FCA claim given the Court's dismissal without prejudice.  If Ms. Christian is able to amend, I intend to do so by the end of this week.

Thank you -

Christine

[Quoted text hidden]
--
Very truly yours,

Christine E. Burke, Esq.
*Managing Partner*
Karpf, Karpf & Cerutti, P.C.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801 phone
(215) 639-4970 fax


# KARPF, KARPF & CERUTTI, P.C.
ATTORNEYS AT LAW



All information and attachments in this message contain privileged and confidential communication. If the reader of this message is not the intended recipient, or any employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer. Thank you.