**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHELLE CHRISTIAN,

                    Plaintiff,

       v.

OMNIS GLOBAL TECHNOLOGIES, LLC;
OMNIS BUILDING TECHNOLOGIES, LLC;
OBT BLUEFIELD, LLC; OMNIS FUEL
TECHNOLOGIES LLC D/B/A OMNIGEN;
OMNIS SUBLIMINATION RECOVERY
TECHNOLOGIES, LLC; AND SIMON
HODSON,

                  Defendants.

Civil Action No. 2:24-cv-01319

<u>**MEMORANDUM OF LAW OF DEFENDANTS IN OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND HER FIRST AMENDED COMPLAINT
AS IT PERTAINS TO HER CLAIMS UNDER THE FALSE CLAIMS ACT AND
PENNSYLVANIA COMMON LAW**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    PROCEDURAL HISTORY................................................................ 2

III.    STATEMENT OF RELEVANT FACTS .......................................... 2

IV.    LEGAL ARGUMENT........................................................................ 5

    A.    Standard of Review.................................................................... 5

    B.    Ms. Christian Fails to State a Claim of Retaliation Under the FCA...................... 6

        1.    Ms. Christian Does Not Allege Facts Plausibly Suggesting "Protected Conduct" Under the FCA........................................... 7

        2.    Ms. Christian Fails to Plead Facts Plausibly Suggesting a Connection Between Her Purported Protected Conduct and the Separation of Her Employment........................................... 12

    C.    Ms. Christian Fails to State a Claim of Wrongful Termination Under Pennsylvania Common Law ........................................... 13

V.    CONCLUSION................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States ex rel. Ascolese v. Shoemaker Constr. Co.*,
    55 F.4th 188 (3d Cir. 2022) ...................................................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................6, 10

*U.S. ex rel. Budike v. PECO Energy*,
    897 F. Supp. 2d 300 (E.D. Pa. 2012) ..................................................................13, 14

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)......................................................................................5

*Carlson v. DynCorp Int'l*,
    657 F. App'x 168 (4th Cir. 2016) ..........................................................................8, 10

*Chowns Group, LLC v. John C. Gimberg Co.*,
    No. 22-2238, 2024 WL 375824 (E.D. Pa. Jan. 20, 2024).........................................8

*Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*,
    No. 13-5592, 2014 U.S. Dist. LEXIS 31681 (D.N.J. Feb. 27, 2014) .......................5

*DeMuro v. Phila. Hous. Auth.*,
    No. 98–3137, 1998 WL 962103 (E.D. Pa. Dec. 22, 1998) ......................................14

*DiFiore v. CSL Behring*,
    LLC, 879 F.3d 71 (3d Cir. 2018) ..............................................................................12

*Dugan v. Bell Tele. of Pa.*,
    876 F. Supp. 713 (W.D. Pa. 1994)............................................................................15

*Foman v. Davis*,
    371 U.S. 178 (1962)....................................................................................................5

*Fraser v. Nationwide Mut. Ins. Co.*,
    352 F.3d 107 (3d Cir. 2003)......................................................................................14

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

**Federal Cases**

*U.S. ex rel. Grant v. United Airlines Inc.*,
   912 F.3d 190 (4th Cir. 2018) ...................................................................13

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010)......................................................................5

*Hall v. Abington Mem'l Hosp.*,
   No. CV 22-2429, 2023 WL 6216526 (E.D. Pa. Sept. 25, 2023)
   ...................................................................................................6, 7, 8, 11, 12

*Holmes v. Schneider Power Corp.*,
   628 F. Supp. 937 (W.D. Pa. 1986), *aff'd*, 806 F.2d 252 (3d Cir. 1986) ..................................15

*Howell v. PPL Servs. Corp.*,
   232 F. App'x 111 (3d Cir. 2007) ............................................................15

*Hutchins v. Wilentz, Goldman & Spitzer*,
   253 F.3d 176 (3d Cir. 2001).................................................................7, 12

*Johnson v. The Univ. of Rochester Med. Ctr.*,
   686 F. Supp. 2d 259 (W.D.N.Y. 2010) .....................................................7

*Khatchikian v. Port Imperial Ferry Corp.*,
   No. CV2162388KMAME, 2021 WL 4705008 (D.N.J. Oct. 7, 2021)......................................7

*Novosel v. Nationwide Ins. Co.*,
   721 F.2d 894 (3d Cir. 1983).....................................................................13

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000).......................................................................5

*Smith v. Ideal Concepts, Inc.*,
   No. 5:23-CV-2166, 2023 WL 8188446 (E.D. Pa. Nov. 27, 2023) .....................................8, 11

*Taylor v. Comhar, Inc.*,
   No. 16-cv-1218, 2021 WL 3857799 (E.D. Pa. Aug. 30, 2021) ..........................................7, 11

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*,
   No. 2:19-CV-01220, 2022 WL 14851121 (W.D. Pa. October 26, 2022)................................14

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Federal Cases**

*Universal Health Services, Inc. v. United States*,
  136 S. Ct. 1989 (2016) ............................................................................7

*U.S. ex rel. Watson v. Connecticut Gen. Life Ins. Co.*,
  87 F. App'x 257 (3d Cir. 2004) ...............................................................7

*Woodson v. AMF Leisureland Ctrs., Inc.*,
  842 F.2d 699 (3d Cir. 1988) ...................................................................14

**State Cases**

*Hunter v. Port Auth. of Allegheny Cnty.*,
  419 A.2d 631 (Pa. Super. 1980) .............................................................14

*Jacques v. Akzo Int'l Salt, Inc.*,
  619 A.2d 748 (Pa. Super. Ct. 1993) ........................................................13

*McLaughlin v. Gastrointestinal Specialists, Inc.*,
  750 A.2d 283 (Pa. 2000) ....................................................................14, 15

*Shick v. Shirey*,
  716 A.2d 1231 (Pa. 1998) .......................................................................14

**Federal Statutes**

31 U.S.C. §§ 3729-3733. ................................................................6, 7, 9, 13

31 U.S.C. § 3730(h)(1) ...................................................................................6

**State Statutes**

18 Pa. Cons. Stat. § 4107 ..........................................................................5, 15

**Rules**

Federal Rule of Civil Procedure 11 ................................................................10

Federal Rule of Civil Procedure 15 .................................................................5

## I.    INTRODUCTION

Defendants Omnis Global Technologies, LLC, ("OGT"), Omnis Building Technologies, LLC, ("OBT"), OBT Bluefield, LLC, ("OBT Bluefield"), Omnis Fuel Technologies LLC D/B/A Omnigen ("OFT"), Omnis Sublimation Recovery Technologies, LLC, ("OSRT"), and Simon Hodson (collectively, "Defendants") hereby respond in opposition to Plaintiff Michelle Christian's ("Ms. Christian") Motion to Amend Her Amended Complaint as it Pertains to Her Claims Under the False Claims Act ("FCA") and Pennsylvania common law. (ECF 46).

Ms. Christian continues to fail to state a claim of retaliation under the FCA.  Perhaps recognizing that her attempt to amend the FCA claim is futile, Ms. Christian also for the first time asserts a claim for wrongful termination under the Pennsylvania common law.

In order to state a claim under the FCA, Ms. Christian has to plead facts stating her objectively reasonable basis for believing that Omnis made a false claim for payment to the government.  She does not do so.  Despite her second amendment, Ms. Christian does not describe complaints with any nexus to an FCA claim.  Ms. Christian also fails to plead facts sufficient to show it was objectively reasonable to believe she was making an effort to stop an FCA violation. Because Ms. Christian fails to state a claim of retaliation under the FCA, her Motion to Amend Count III of her Second Amended Complaint should be denied.

Ms. Christian's Pennsylvania common law claim is also legally deficient because it is based on the same facts as her FCA claim and therefore preempted by her FCA claim.  Whether Ms. Christian states a claim under the FCA is immaterial—it is the existence of the remedy that determines preemption.  Moreover, Ms. Christian's common law claim addresses alleged conduct that at best relates to the public policy of West Virginia, not Pennsylvania.  Ms. Christian's Pennsylvania common law claim is therefore futile, as well.

As set forth further below, Ms. Christians' Motion to Amend should be denied because her proposed amendments are futile.

## II.    PROCEDURAL HISTORY

On March 28, 2024, Ms. Christian filed a Complaint alleging, among other claims, retaliation under the FCA.  (ECF 1).  Defendants moved to dismiss Ms. Christian's FCA claim, and the parties subsequently stipulated to Ms. Christian filing an Amended Complaint to assert additional discrimination claims.  (ECF 10, 22).  The Court granted the stipulation, and on November 4, 2024, Ms. Christian filed her First Amended Complaint.  (ECF 23-24).  On November 18, 2024, Defendants again moved to dismiss Ms. Christian's FCA claims.  (ECF 28). On July 10, 2025, the Court granted Defendants' Motion to Dismiss, without prejudice. (ECF 37-38).

Ms. Christian filed a Motion for Leave to Amend her Amended Complaint on August 19, 2025, appending a proposed Second Amended Complaint which amends the averments in support of her FCA claim and adds a claim under Pennsylvania common law.  (ECF 46).  On September 2, 2025, the parties stipulated to an extension for Defendants to respond to Ms. Christian's Second Amended Complaint.  (ECF 50).  The Court granted the stipulation, and Defendants now timely move to partially dismiss Plaintiff's Second Amended Complaint for failure to state a claim for relief under the FCA and Pennsylvania common law.

## III.    STATEMENT OF RELEVANT FACTS

By way of background, Ms. Christian began working for OGT on November 16, 2020, as the Vice President of Government Relations, reporting directly to OGT President Simon Hodson. (ECF 46-4 at ¶¶ 14, 18).  Ms. Christian was responsible for "connecting all Defendant Omnis companies with private and public contacts to develop all Defendant Omnis' businesses."  (*Id.* at ¶ 15).  In support of this opposition brief, Defendants identify the averments related to

Ms. Christian's FCA claim and her claim for wrongful termination under Pennsylvania common law.

Ms. Christian's factual averments recite the same protected conduct the Court held was insufficient in her First Amended Complaint. (ECF 46-4 ¶¶ 59-78; *see also* ECF 37, Opinion and Order). The FCA count of Ms. Christian's Second Amended Complaint, however, contains 107 paragraphs purporting to support her claim. Of the 107 averments, less than twenty relate in any way to federal government monies. The remainder of Ms. Christian's allegations recount private loans, state government loans, and background allegations which add "color" to her Second Amended Complaint.

Relevant here, Ms. Christian contends Mr. Hodson "was actively trying to secure a $25 million loan, guaranteed through the United States Department of Agriculture ("USDA")" in or around April 2021. (ECF 46-4 ¶¶ 107-108). She alleges "[t]he due diligence period was not proving promising for this federally guaranteed loan" and "[u]ltimately Defendant Hodson did not pass Live Oak's due diligence process, and he was not able to secure the $25 million federally guaranteed loan (nor a conventional loan)." (ECF 46-4 ¶¶ 111, 113). According to Ms. Christian, by March of 2022, Mr. Hodson "had secured a little over $1 million in funding from the government" but "[b]y August 2022, although federal government monies were spent for land development for the Bluefield Project, the facility never commenced operations." (ECF 46-4 ¶¶ 122, 124, 128). Ms. Christian further contends that Mr. Hodson acquired lab space in Morgantown, West Virginia, with the assistance of the West Virginia Economic Development Authority ("WVEDA"). (ECF 46-4 ¶¶ 131-132). The "WVEDA has a direct lending program, but a majority of the funding supplied by WVEDA was a pass through from the federal government, including through federal tax-exempt industrial revenue bonds and federally funded

grants."  (ECF 46-4 ¶ 136).  Ms. Christian claims that the "payments for the Morgantown, WV lease itself were consistently late, and Plaintiff was receiving calls from the local EDA constantly seeking payment on the contract for the property."  (ECF 46-4 ¶ 137).

Ms. Christian alleges that, "[i]n or about the Fall of 2022, Defendant Hodson executed a contract with the State of West Virginia that would allow Omnis Sublimation Recovery Technologies to receive dollar for dollar matching funds, which are believed to be originally federal funds allocated to the states, for funds Omnis actually expended on its Bluefield project." (ECF 46-4 ¶ 144).  She contends that Mr. Hodson was "attempting to obtain payment from the State of West Virginia by alleging that he had already spent millions of dollars" on the matching funds project.  (ECF 46-5 ¶ 45).  She describes the "documents" Mr. Hodson provided to support his "attempt for payment" as "misleading," and claims he was "not entitled to any government fund as 'dollar for dollar reimbursement.'"  (ECF 46-4 ¶¶ 147, 149-150).  She does not claim Defendants ever received a dollar-for-dollar reimbursement from the State of West Virginia.

Ms. Christian alleges that Mr. Hodson also "tried unsuccessfully in or about March of 2023 to obtain a loan of nearly $800 million from the [United States Department of Energy] ("DOE")". (ECF 46-4 ¶ 168).  Next, "between May 2023 to August 2023 Defendant Hodson was scheduling meetings in Charleston, West Virginia without Plaintiff, as he was seeking $100 million dollars through the State (and any federal funding available through the State)."  (ECF 46-4 ¶ 179). Ms. Christian says she "learned through conversations with government officials that Defendant Hodson was claiming to already have secured a substantial loan and funding from the DOE – when in fact, he had been denied even the ability to apply for the funding."  (ECF 46-4 ¶ 180). Ms. Christian later reiterates that Mr. Hodson "did not even qualify at that time to apply for any money from the Loan Processing Office at the Federal Department of Energy, let alone get

approved for any money." (ECF 46-4 ¶ 185).  Ms. Christian alleges she opposed Mr. Hodson's federal loan efforts in 2022 and 2023. (*See, e.g.*, ECF 46-4 ¶¶ 149, 151, 154, 160, 167, 181-182, 186, 191, 196).  Ms. Christian claims that, days after she expressed concerns about alleged "misrepresentations" made by Mr. Hodson to government officials and complained about sex-based harassment, she was instructed to "cease and desist all work for any of the Omnis companies." (*Id.* at ¶ 75).

In support of Ms. Christian's wrongful termination claim under the Pennsylvania common law, she incorporates her prior allegations and contends she refused to commit a crime under 18 Pa. Cons. Stat. § 4107, which governs deceptive or fraudulent business practices. (ECF 46-4 Count IX).  Because Ms. Christian's Second Amended Complaint will not survive a motion to dismiss, Defendants oppose Ms. Christian's Motion to Amend.

## IV.    LEGAL ARGUMENT

### A.    Standard of Review

Under Federal Rule of Civil Procedure 15, this Court may deny a motion to amend a complaint as futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Futility exists where the proposed amended claims fail to state a claim for which relief can be granted. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (stating that "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).  "[I]n evaluating futility, the Court employs the 'same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'"  *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-5592, 2014 U.S. Dist. LEXIS 31681, at *2-4 (D.N.J. Feb. 27, 2014) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).  "For a complaint to survive dismissal pursuant to this standard, it 'must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face.'" *Custom Pak Brokerage, LLC*, 2014 U.S. Dist. LEXIS 31681, at *4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plaintiff's complaint must, but cannot merely, recite the elements of a cause of action and must also contain more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Because Ms. Christian's FCA and common law claims fail to meet this standard, Plaintiff's Motion to Amend Counts III and IX should be denied.

### B.    Ms. Christian Fails to State a Claim of Retaliation Under the FCA

The FCA prohibits knowingly making false or fraudulent claims to get the federal government to pay for goods or services. *See* 31 U.S.C. §§ 3729–3733.  Section 3730(h), on which Ms. Christian bases her retaliation claim, protects employees, contractors, and agents of a business:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).  Specifically, protected activity under the FCA requires an employee to allege that he engaged in "lawful acts" … "in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."  31 U.S.C. § 3730 (h)(1).  There are two categories of "protected conduct" under the FCA: (1) "lawful acts done . . . in furtherance of" an FCA action; and (2) "other efforts to stop 1 or more violations of [the FCA]."  31 U.S.C. § 3730(h)(1); *see Hall v. Abington Mem'l Hosp.*, No. CV 22-2429, 2023 WL 6216526, at *3 (E.D. Pa. Sept. 25, 2023) (discussing the "litigation" and "other efforts" prongs of § 3730(h)(1)).  Ms. Christian brings her claim under the second prong of § 3730(h)(1)—the "other efforts" prong.

6

To state a *prima facie* case of retaliation under the "other efforts" prong of the FCA, Ms. Christian must show she (1) engaged in protected conduct; and (2) experienced discrimination "because of" the protected conduct. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001); *Hall*, 2023 WL 6216526, at *3.

### 1.    Ms. Christian Does Not Allege Facts Plausibly Suggesting "Protected Conduct" Under the FCA

The first element of a *prima face* claim requires plaintiffs proceeding under the "other efforts" prong to plead facts plausibly suggesting "that some nexus exists between their actions and the prevention of an actual or potential violation of the FCA." *Hall*, 2023 WL 6216526, at *4. They must also plead facts plausibly suggesting their belief about the employer's actual or impending FCA violation was "objectively reasonable." *Id.*

The FCA requires a false claim for payment from the federal government. *See* 31 U.S.C. §§ 3729–3733; *see also Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016) (the FCA does not cover all frauds, only those where a false claim for payment has been made to the government); *U.S. ex rel. Watson v. Connecticut Gen. Life Ins. Co.*, 87 F. App'x 257, 260 (3d Cir. 2004) (same). "Not all false statements made to the federal government are claims within the meaning of the False Claims Act"; the FCA "only prohibits fraudulent claims that cause or would cause economic loss to the government." *Hutchins*, 253 F.3d at 179, 183. "The False Claims Act protects governmental funds and property from fraudulent claims, and the Supreme Court has cautioned that it does not serve as 'a vehicle for punishing garden-variety breaches of contract or regulatory violations.'" *Taylor v. Comhar, Inc.*, No. 16-cv-1218, 2021 WL 3857799, at *1 (E.D. Pa. Aug. 30, 2021) (quoting *Universal Health Services, Inc. v. U.S. and Mass., ex rel. Julio Escobar and Carmen Correa*, 136 S. Ct. 1989, 2003 (2016)); *see also Khatchikian v. Port Imperial Ferry Corp.*, No. CV2162388KMAME, 2021 WL 4705008, at *9 (D.N.J. Oct. 7, 2021)

("The FCA is not a generalized anti-retaliation law; a claim of retaliation must be predicated on acts that are 'protected' under the FCA.") (emphasis in original); *Johnson v. The Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 269 (W.D.N.Y. 2010) (granting the defendant's motion to dismiss the plaintiffs' FCA retaliation claim where the plaintiffs never alleged that defendant had submitted fraudulent bills to the government).

Thus, a plaintiff must plead enough facts to plausibly suggest she has an objectively reasonable belief the employer made, or was about to make, a false claim to cause the government to pay money. *Carlson v. DynCorp Int'l*, 657 F. App'x 168, 173 (4th Cir. 2016) (affirming the dismissal of the plaintiff's complaint where it did not contain enough facts to suggest that the employer "made or was about to make a false claim on the government") (internal citation omitted) (emphasis added); *see also Chowns Group, LLC v. John C. Gimberg Co.*, No. 22-2238, 2024 WL 375824, at *9 (E.D. Pa. Jan. 20, 2024) (noting that protected conduct need not consist of a winning FCA claim but must consist of "actions taken in furtherance of a viable False Claims Act case," and dismissing the lawsuit for failure to allege facts plausibly suggesting such actions) (internal citation omitted); *Smith v. Ideal Concepts, Inc.*, No. 5:23-CV-2166, 2023 WL 8188446, at *4 (E.D. Pa. Nov. 27, 2023) (dismissing the plaintiff's FCA claim for failing to state a nexus to a FCA violation).

Ms. Christian has not pleaded enough facts to plausibly suggest she had an objective, reasonable belief any Defendant made, or was about to make, a false claim for payment from the government. As with her First Amended Complaint, "Christian's FCA retaliation claim relies heavily on conclusory statements of misrepresentation and fraud rather than factual averments." (ECF 37, July 11, 2025, Opinion and Order). "A complaint must cite specific violations of statutory, regulatory, or contractual requirements to meet the 'objective reasonableness' standard."

(*Id.* (citing *Hall*, 2023 WL 6216526, at *5-7)).  Ms. Christian's Second Amended Complaint describes Defendants' alleged efforts to obtain *private investment* in their business ventures and loans she claims Defendants received from the *State of West Virginia* based on purportedly false representations—she does not identify false claims for payment from the *federal government* as required to state a claim under the FCA.  *See* 31 U.S.C. §§ 3729–3733.

Ms. Christian's allegations referencing federal government monies can be separated into three categories: 1) attempts to receive loans, 2) late payments on a loan received for the lease of land for a lab that is not yet operational, and 3) an attempt to receive payment with misleading documents. Each vague contention is insufficient under the law.

With regard to the attempts Defendants made to receive loans, Ms. Christian does not identify any application for a loan that was false.  She states Defendants were "actively trying" to secure a loan through the USDA, though the due diligence period was "not promising" and ultimately Defendants *were not able to receive a loan*.  (ECF 46-4 ¶¶ 108, 111, 112).  She further contends that Defendants "tried unsuccessfully" to obtain a loan from the Department of Energy, because Defendants "*did not even qualify at that time to apply for any money*."  (ECF 46-4 ¶¶ 168, 185) (emphasis added).  It is not objectively reasonable to believe that the mere discussion of or attempt to receive a federal loan without any application for same is an attempt to make a false claim for payment from the federal government.  Ms. Christian herself pleads that Defendants *did not qualify* for a loan from the Department of Energy.  Query how Ms. Christian was making an effort to stop a violation of the FCA when Defendants "did not even qualify to apply for any money." While Ms. Christian identifies purportedly false statements made to private investors and individuals employed by the State of West Virginia, she does not identify any false statements made in support of a claim for payment from the federal government.

Next, as to late payments on a loan received for the lease of land for a lab that is not yet operational, Ms. Christian again fails to identify a false claim for payment. Ms. Christian contends that that the WVEDA "assisted with the acquisition" of a lab. (ECF 46-4 ¶ 132). She claims the WVEDA has a "direct lending program, but a majority of the funding" was a "pass through from the federal government." (ECF 46-4 ¶ 136). She contends the payments on the land lease were "consistently late" and the local economic development agency would call Ms. Christian seeking payment. (ECF 46-4 ¶ 137). In sum, Ms. Christian alleges that "federal government monies" were spent on the land but the facility has not commenced operations and Defendants payment to the WVEDA was late. The assertion that the lab is not yet operational does not make the request for assistance on a lease from the WVEDA fraudulent. Nor do late payments *from Defendants* to the WVEDA. The FCA requires a nexus to a false claim for payment from the federal government.

Finally, Ms. Christian contends without support that the State of West Virginia's dollar-for-dollar matching funds "are believed to be originally federal funds." (ECF 46-4 ¶ 144). Federal Rule of Civil Procedure 11 permits averments made on information and belief, but they must be based on the party's information and belief. Ms. Christian's vague assertion of "are believed to be" does not satisfy the pleading requirement required by *Twombly*—Ms. Christian's Second Amended Complaint must contain more than labels and conclusions. *Twombly*, 550 U.S. at 555. Even if Ms. Christian can satisfy the pleading standard, Ms. Christian fails to state a claim under the FCA where she contends Mr. Hodson "was attempting to obtain payment from the State of West Virginia" on that contract with "misleading" documents. (ECF 46-4 ¶¶ 145, 149-150). This averment, as with each of the others in Ms. Christian's Second Amended Complaint, does not contain "'enough factual matter (taken as true) to suggest that' [the defendant] made or was about to make a false claim on the government. *Carlson*, 657 F. App'x at 173 (citing *Twombly*, 550 U.S.

at 556).  Ms. Christian does not explain how the documents were "misleading," but contends she worked to require future requests to "show actual receipts and not just invoices."  (ECF 46-4 ¶ 155).  It is not plausible that Ms. Christian was making an effort to stop a violation of the FCA based on misleading documents Mr. Hodson allegedly sent to the State of West Virginia that could apparently be cured by the inclusion of receipts in support.  In addition, Ms. Christian describes a contract for payment with the State of West Virginia for dollar-for-dollar matching funds.  The allegation that Defendants did not comply with the contract is not covered by the FCA.  *Taylor*, 2021 WL 3857799, at *1 (explaining that the FCA is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations.") (internal citations omitted).  Finally, Ms. Christian does not contend that Defendants "knowingly" made a false or fraudulent claim for payment as required by the FCA. Simply submitting "misleading documents" in order to seek a reimbursement under a contract is insufficient to state a claim.

Noticeably absent from Ms. Christian's claims is any claim for payment from the federal government or any specific attempt to obtain government monies.  As the court explained in *Smith v. Ideal Concepts*, a nexus between the defendants alleged conduct and a fraudulent claim for payment from the government is required by the FCA.  No. 5:23-CV-2166, 2023 WL 8188446, at *4 (E.D. Pa. Nov. 27, 2023).  In *Smith*, the plaintiff alleged that his employer retaliated against him "for having reported [its] ongoing *fraudulent misrepresentation* to the Federal government." 2023 WL 8188446, at *4 (emphasis in original).  The plaintiff alleged that the company was violating CMS regulations and receiving Medicare monies, but he pointed to no law, rule, or regulation in support.  *Id*.  The court found that the plaintiff put forth "an unclear theory of FCA retaliation" and made "a conclusion without any factual averments to support it."  *Id*.  The court dismissed plaintiff's FCA claim because the plaintiff failed "to explain how the purported"

11

regulatory violations rendered any claim for payment from "the federal government fraudulent or a potential FCA violation" as required to state a claim under the FCA. *Id.* (*citing Hall,* 2023 WL 6216526, at *3 (dismissing the plaintiffs' FCA retaliation claim where the plaintiffs complained about billing Medicare and Medicare for the use of recalled medical equipment)). In short, the plaintiffs did not "'identify a nexus between the plaintiffs' conduct and a potential FCA violation.'" *Id.* As demonstrated above, the same is true here. Ms. Christian has not pleaded enough facts to plausibly suggest she had an objective, reasonable belief any Defendant made, or was about to make, a false claim for payment from the government. Her amendment is futile.

### 2. Ms. Christian Fails to Plead Facts Plausibly Suggesting a Connection Between Her Purported Protected Conduct and the Separation of Her Employment

The second element of a *prima faci*e claim requires plaintiffs to plead facts plausibly suggesting "that the discrimination would not have occurred but for the plaintiffs' protected activity; the protected activity cannot merely be one of several motivating factors that lead to discriminatory treatment." *Id.* (citing *DiFiore v. CSL Behring*, LLC, 879 F.3d 71, 76–78 (3d Cir. 2018)). Meaning, a plaintiff must also plead facts plausibly suggesting she experienced discrimination that "would not have occurred but for [her] protected activity; the protected activity cannot merely be one of several motivating factors that lead to discriminatory treatment." *Hall*, 2023 WL 6216526, at *5; *Hutchins*, 253 F.3d at 188 (noting the "but-for" standard). To meet this requirement, a plaintiff must show her employer had knowledge that she was engaged in "protected conduct" and that the employer retaliated against her because of that conduct. *Id.*; s*ee also United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 197 (3d Cir. 2022) (discussing the FCA notice requirement following the 2009 and 2010 amendments).

While she alleges she objected to efforts to mislead the government, she does not explain how her complaints put Omnis on notice of a claim under the FCA. Meaning, Ms. Christian falls

short of averring how her actions were done to stop one or more violations of the FCA and that there was an objectively reasonable possibility of an FCA action. *See Ascolese*, 55 F.4th 188, *194-195 (rejecting the "distinct possibility of an FCA action" standard for the second prong) (quoting *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018) (rejecting the "distinct possibility" standard for the second prong of §3730(h) and adopting an "objectively reasonable possibility" of a FCA action standard)). To meet this requirement, Ms. Christian must show her employer *had knowledge* that she was engaged in protected conduct and that her employer retaliated against her because of that conduct. *Id; see also Ascolese*, 55 F.4th at 197. Defendants could not have been on notice when Defendants have not made or attempted to make any false claim for payment to the federal government.

Additionally, Ms. Christian claims she began her efforts to stop a violation of the FCA in 2022 or early 2023, at least nine months before her separation from Defendants. Taking Ms. Christian's allegations as true, her Second Amended Complaint is devoid of facts to show it was objectively reasonable to believe Ms. Christian was making an effort to stop an FCA violation, and yet Defendants waited nine months to retaliate against her.

Ms. Christian does not plead facts to support the second element of a FCA claim. Ms. Christian's Motion to Amend Count III should be denied as futile.

### C. Ms. Christian Fails to State a Claim of Wrongful Termination Under Pennsylvania Common Law

Under Pennsylvania law, a cause of action for wrongful discharge may only be maintained in the absence of a statutory remedy for an aggrieved employee. *See Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 899 (3d Cir. 1983); *Jacques v. Akzo Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. Ct. 1993). This rule has been applied to bar common law claims where an individual has an appropriate statutory remedy under the FCA. *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp.

2d 300, 307 (E.D. Pa. 2012). As the court in *Budike* explained, "[t]he facts underlying [the Pennsylvania wrongful discharge] allegation are the same facts underlying the FCA retaliation claim. Whether Relator's FCA claim can succeed is irrelevant. 'It is the existence of the remedy, not the success of the statutory claim, which determines preemption.'" *Budike*, 897 F. Supp. 2d at 307 (quoting *DeMuro v. Phila. Hous. Auth.*, No. 98–3137, 1998 WL 962103, at *5 (E.D. Pa. Dec. 22, 1998) (internal quotation marks and citation omitted)). Because Ms. Christian's common law claim is preempted by her FCA claim, her motion to amend to include a claim of wrongful discharge is futile.

Even if Ms. Christian's common law claim is not preempted, an at-will employee like Ms. Christian generally cannot pursue a wrongful termination claim in Pennsylvania. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000); *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998) ("[A]s a general rule, no cause of action exists based upon an employer's termination of an at-will employment relationship."). There is, however, an exception "where the termination [of an at-will employee] implicates a clear mandate of public policy." *McLaughlin*, 750 A.2d at 287. The limited scenarios where courts have recognized such a wrongful termination claim are when an employee is discharged after (1) refusing to commit a crime; (2) complying with a statutorily imposed duty; or (3) exercising a constitutional right. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 112 (3d Cir. 2003); *Hunter v. Port Auth. of Allegheny Cnty.*, 419 A.2d 631, 638 (Pa. Super. 1980). Ms. Christian attempts to rest her claim on the first of the three—refusal to commit a crime. (ECF 46-4, Count IX).

Establishing a wrongful termination claim based on a party's refusal to commit a crime is a high hurdle. *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ.*, No. 2:19-CV-01220, 2022 WL 14851121, at *4 (W.D. Pa. October 26, 2022). The claim has been recognized in

14

circumstances where an employer asked the at-will employee to commit an illegal act that would subject them to criminal liability. *Id.* (citing *Woodson v. AMF Leisureland Ctrs., Inc.*, 842 F.2d 699, 702 (3d Cir. 1988) (demanding a bartender serve alcohol to intoxicated individuals in violation of Pennsylvania law); *Dugan v. Bell Tele. of Pa.*, 876 F. Supp. 713, 725 (W.D. Pa. 1994) (requiring an employee destroy subpoenaed records that could have exposed him to criminal liability)). Ms. Christian repeatedly claims she told Mr. Hodson she would not lie or mislead the government, but she does not contend that Mr. Hodson asked her to commit an illegal act that would subject her to criminal liability. Moreover, while Ms. Christian claims she refused to violate 18 Pa. Cons. Stat. § 4107, Ms. Christian identifies conduct that only took place in West Virginia. A Pennsylvania wrongful termination claim requires the violation of a public policy evidenced by Pennsylvania law. *McLaughlin*, 750 A.2d at 288. As the court explained:

> Our previous cases in this arena have not directly addressed the issue of what constitutes "public policy," but we have stated in cases outside of the wrongful termination context that public policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest.

*Id.* (internal quotations and citations omitted) (emphasis added). Thus, the court in *McLaughlin* held that, because the plaintiff had not shown any alleged violation of Pennsylvania law, she could not maintain a claim for wrongful termination. *Id.* at 288-90; *see also Howell v. PPL Servs. Corp.*, 232 F. App'x 111, 113-14 (3d Cir. 2007) (affirming dismissal of wrongful termination claim premised on allegations that plaintiff was discharged because he complained internally about alleged violations of Nuclear Regulatory Commission regulations); *Holmes v. Schneider Power Corp.*, 628 F. Supp. 937, 940 (W.D. Pa. 1986) (granting summary judgment and dismissing wrongful discharge claim based on alleged OSHA violations, stating that, "because OSHA is a federal law, we do not believe that this legislative scheme in itself provides any indication of a

Pennsylvania state policy"), *aff'd*, 806 F.2d 252 (3d Cir. 1986) (unpublished table decision).

In this case, Ms. Christian alleges she refused to lie to the government in violation of the FCA. She does not contend that she refused to lie (or was even asked to lie) to any other investor, or any individual in Pennsylvania. Indeed, all of the conduct Ms. Christian describes in support of her claim relates to investors and government officials in West Virginia. While Ms. Christian did primarily work remotely from Pennsylvania, any alleged crime would have occurred in West Virginia. All of the in-person conduct Ms. Christian identifies in her Second Amended Complaint also occurred in West Virginia. As such, the public policy at issue here is that of West Virginia, not Pennsylvania.

Because Ms. Christian's wrongful discharge claim is futile, her Motion to Amend should be denied.

## V.    CONCLUSION

Ms. Christian's Second Amended Complaint is speculative and, to the extent she raised concerns, they are too attenuated to state a claim for retaliation under the FCA.  Her wrongful discharge claim is also deficient because it is preempted by the FCA and fails to allege that Mr. Hodson asked her to violate any law.  Because the allegations added in Ms. Christian's proposed Second Amended Complaint would not survive a Motion to Dismiss, Defendants respectfully request that her Motion for Leave to Amend be denied with prejudice.


Dated:  September 19, 2025                          Respectfully submitted,


                                                   */s/ Alexa J. Laborda Nelson*_____
                                                   Matthew J. Hank, Bar No. 86086
                                                   mhank@littler.com
                                                   Alexa J. Laborda Nelson, Bar No. 314652
                                                   alabordanelson@littler.com
                                                   Haley R. Norwillo, Bar No. 333731
                                                   hnorwillo@littler.com
                                                   LITTLER MENDELSON, P.C.
                                                   Three Parkway, 1601 Cherry Street
                                                   Suite 1400
                                                   Philadelphia, Pennsylvania 19102.1321
                                                   Telephone:    267.402.3000
                                                   Facsimile:    267.402.3131

                                                   Attorneys for Defendants Omnis Global
                                                   Technologies, LLC, Omnis Building
                                                   Technologies, LLC, OBT Bluefield, LLC,
                                                   Omnis Fuel Technologies, Omnis Sublimation
                                                   Recovery Technologies, LLC, and Simon
                                                   Hodson

## CERTIFICATE OF SERVICE

I certify that on this 19th day of September 2025, a copy of the Defendant's Memorandum of Law in Opposition to Plaintiff's First Motion to Amend Her Complaint was filed using the Eastern District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Ari R. Karpf, Esq.
Christine E. Burke, Esq.
KARPF, KARPF & CERUTTI, P.C.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

akarpf@karpf-law.com
cburke@karpf-law.com

*Counsel for Plaintiff*

*/s/ Alexa J. Laborda Nelson*
Alexa J. Laborda Nelson