**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE CHRISTIAN,**<br><br>Plaintiff,<br>**v.**<br><br>**OMNIS GLOBAL TECHNOLOGIES, LLC, *et al.*,**<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br><br><br>**NO. 24-1319** |

**ORDER**

**AND NOW,** this 23rd day of October, 2025, upon consideration of Plaintiff's First Motion to Amend Her Complaint (ECF No. 46) and the Memorandum of Law of Defendants in Opposition thereto (ECF No. 58), it is hereby **ORDERED** that the Motion is **GRANTED in part and DENIED in part** as set forth below:

1. the Motion is **GRANTED** with respect to Count III, as set forth in the Proposed Second Amended Complaint (ECF No. 46-4 at 15–30);[1] and
2. the Motion is **DENIED** with respect to Count IX, as set forth in the Proposed Second Amended Complaint (ECF No. 46-4 at 35).[2]

Plaintiff shall file her Second Amended Complaint consistent with this Order by **October 30, 2025**.

BY THE COURT:

[signature]

Hon. Mia R. Perez

[1] On March 28, 2024, Plaintiff Michelle Christian sued her former employers (collectively, "Omnis" or "Omnis Defendants") and their founder Simon Hodson, setting forth eight claims, including one for retaliation in violation of the False Claims Act ("FCA"). On July 10, 2025, this Court dismissed Christian's FCA retaliation claim because she failed to allege enough facts to show her complaints to Omnis supervisors advanced a viable FCA claim or that her

complaints were based on her "objectively reasonable" belief of a possible FCA violation. ECF No. 37 at 6–7, 9; ECF No. 38. On August 19, 2025, Christian filed the instant motion seeking leave to file a Second Amended Complaint strictly as it pertains to her FCA retaliation claim and to assert a new cause of action under Pennsylvania common law. ECF No. 46. She attached a proposed Second Amended Complaint ("SAC") to her motion. ECF No. 46-4. Defendants filed a brief in opposition on September 19, 2025, arguing amendment would be futile. ECF No. 58.

The court must generally grant leave to amend "unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *see also* Fed. R. Civ. P. 15(a)(2). A court may deny leave to amend, however, where amendment would be futile. *Arthur*, 434 F.3d at 204. Amendment would be futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted," and futility is assessed under the Rule 12(b)(6) standard. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual material that, when accepted as true and considered in the light most favorable to the plaintiff, states a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Christian has pled sufficient facts to support an FCA retaliation claim in Count III. *See* SAC at 15–30. To state an FCA retaliation claim under 31 U.S.C. § 3730(h), a plaintiff must allege facts showing she (1) engaged in protected conduct and (2) experienced discrimination "because of" the protected conduct. *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d Cir. 2018); *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 194 (3d Cir. 2022). Omnis Defendants argue the SAC lacks sufficient facts to establish either element. Specifically, Defendants argue Christian has not (1) described complaints with any nexus to an FCA claim or (2) pled facts sufficient to show it was objectively reasonable to believe she was making an effort to stop an FCA violation, in part because the alleged funding was sought from private investors and state officials, not the federal government.

To establish she has stated an FCA retaliation claim, Christian points to two instances where she claims Hodson tried to use her "as a liaison to provide false information to government authorities to secure federal funding." ECF No. 46-1 at 14. First, in the fall of 2022, Hodson and the State of West Virginia executed a contract that would allow Omnis Defendants to receive reimbursements for expenses from funds "believed to be originally federal funds allocated to the states." SAC ¶ 144. Hodson thereafter provided documents to the State implying it had spent money to hire a company for the project and seeking reimbursements for those payments (the "2022 Reimbursements"). *Id.* ¶¶ 144–45. But Hodson had not actually made those payments to anyone, so he was not entitled to reimbursement. *Id.* ¶ 150. Second, in 2023, Hodson sought to secure a $100 million loan through the State of West Virginia, including from federal funds available through the State, "based upon material falsities related to the financial status of his companies and having qualified for loans through the DOE (which never occurred)." ECF No. 46-1 at 14; *see* SAC ¶¶ 172, 180. Omnis Defendants eventually secured a $50 million loan (the "2023 Loan") instead of $100 million because Christian had revealed Hodson's misstatements to state officials. *Id.* ¶¶ 183, 196. The 2023 Loan also allegedly included federal funds. *Id.* ¶ 197. Christian confronted Hodson about the false statements, reported them to state officials, and informed Hodson she would continue to do so. *Id.* ¶ 186. Shortly thereafter, Christian was terminated. *Id.* ¶ 75.

The Third Circuit recognizes two categories of protected conduct: (1) "lawful acts done . . . in furtherance of an [FCA] action"—the "FCA litigation" prong—or (2) "lawful acts done . . . in furtherance of . . . other efforts to stop 1 or more [FCA] violations"—the "other efforts" prong. 31 U.S.C. § 3730(h)(1); *see also Ascolese*, 55 F.4th at 195. For Christian's claim under the "other efforts" prong, this Court previously applied a standard requiring facts sufficient to show she had an "objectively reasonable" belief that her employer had violated or was about to violate the FCA. ECF No. 37 at 8. The objective reasonableness standard requires the plaintiff to identify "specific violations of statutory, regulatory, or contractual requirements." *Id.* (citing *Hall v. Abington Mem'l Hosp.*, No. CV 22-2429, 2023 WL 6216526, at *5–7 (E.D. Pa. Sept. 25, 2023)).

The first hurdle Christian must clear is to plausibly allege the funds Hodson sought were provided, at least in part, by the federal government. *See* 31 U.S.C. § 3729(b)(2)(A)(ii) (defining "claim" as "any request or demand, whether under a contract or otherwise," if the federal Government "provides or has provided any portion of the money . . . requested" and the funds are "to be spent or used on the Government's behalf or to advance a Government program or interest"); *see also Wis. Bell, Inc. v. United States ex rel. Heath*, 604 U.S. 140, 149 (2025) (defining "provide[d]" as "supplied, furnished, or made available any portion of the money . . . sought").

According to the SAC, the funds supplying the 2022 Reimbursements were "believed to be originally federal funds allocated to the states." SAC ¶ 144. In connection with the 2022 Reimbursements, Christian was interacting with the Infrastructure Coordinator and *Federal* Funds and Grants Director of the West Virginia Economic Development

Agency ("WVEDA"). SAC ¶ 146 n.3. Additionally, Christian alleges the funds involved in the 2023 Loan from the WVEDA consisted of "$50 million in federal funds." *See* SAC ¶ 197. The majority of WVEDA funding "was a pass through from the federal government, including through federal tax-exempt industrial revenue bonds and federally funded grants." SAC ¶ 136. Omnis Defendants argue Christian's allegation that the 2022 Reimbursements were "believed to be originally federal funds" is insufficient as an averment made on "information and belief." *See* ECF No. 58 at 15. This court disagrees. Christian was involved in multiple negotiations in pursuit of funding on Omnis' behalf, she conversed with officials regarding the funding requests, and she worked closely with Hodson to obtain funding for various Omnis projects. In connection with the allegedly false or fraudulent claims, Christian also specifically worked with the state official responsible for directing federal funds. Christian has plausibly pled the 2022 Reimbursements and 2023 Loan were comprised, at least in part, of federal funds.

Further, the SAC identifies specific violations of contractual and statutory requirements. The 2022 Reimbursements involved specific documents seeking reimbursements to which Omnis Defendants were not entitled under the contract, and the 2023 Loan was supported by false statements, as identified in the SAC. Because in both circumstances the claims for federal funds were pursued using allegedly false or fraudulent statements, Christian has put forth sufficient facts to support an objectively reasonable belief that an FCA violation was being or would be committed.

The second element of an FCA retaliation claim requires facts showing the plaintiff experienced discrimination "because of" the protected conduct. *DiFiore*, 879 F.3d at 76. In other words, the plaintiff must plead facts showing that the discrimination would not have occurred but-for the protected conduct. To establish causation under the "other efforts" prong, a plaintiff need only plead "facts giv[ing] rise to a plausible inference that [her employer] was on notice of [her] efforts to stop FCA violations . . . and retaliated by firing [her]." *Ascolese*, 55 F.4th at 197.

Omnis Defendants argue they could not have been on notice of Christian's protected conduct because they did not attempt to make any false claims for payment from the federal government. ECF No. 58 at 18. And even if they were aware, they contend Christian's efforts to stop the alleged FCA violations began 9 months before her termination, so it could not have been retaliation. *Id.* This Court agrees with Defendants with respect to the 2022 Reimbursements but disagrees with respect to the 2023 Loan.

Regarding the 2022 Reimbursements, Christian told Hodson only that he needed to provide actual proof that he spent the money for which he sought reimbursements, that she would not lie for him and "would tell the government if he tried to mislead them," and that she was "very uncomfortable" with the misleading invoices. *See* SAC ¶¶ 149–56. Christian did not explicitly state that the conduct was fraudulent or that Omnis Defendants were risking fines or other penalties for the submission of the misleading reimbursement requests. This is insufficient to put Omnis Defendants on notice that Christian was taking actions to stop *FCA violations* as opposed to mere contractual breaches. *Compare*, *e.g.*, *United States ex rel. Ruggeri v. Magee-Womens Rsch. Inst. & Found.*, No. 2:19-CV-862, 2024 WL 1767514, at *11 (W.D. Pa. Apr. 24, 2024) (finding sufficient notice where plaintiff sent employer email explaining difference between grant compliance and federal audit, federal government's concern with meeting statutory requirements, and risk of fines for submission of fraudulent claims); *Ascolese*, 55 F.4th at 197 (finding multiple complaints specifically identifying fraudulent conduct provided notice of protected conduct).

However, with respect to Hodson's alleged efforts to secure the 2023 Loan, Christian repeatedly refused to lie to or mislead government officials, and she explicitly made known she would report his false claims to government officials and that "she would not be a part of [Hodson's] fraud towards the government." SAC ¶¶ 172–87. Christian was terminated ten days later. "[T]hese facts give rise to a plausible inference that [Omnis Defendants were] on notice of [Christian's] efforts to stop FCA violations . . . and retaliated by firing [her]." *Ascolese*, 55 F.4th at 197. Accordingly, Christian has stated a claim for FCA retaliation based on protected conduct relating to the 2023 Loan.

[2] Christian's state law wrongful discharge claim is preempted by the FCA. Even absent preemption, Christian has not established Omnis Defendants terminated her employment in violation of Pennsylvania's public policy.

Under Pennsylvania law, "there is no common law cause of action against an employer for termination of an at-will employment relationship" except in "the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Weaver v. Harpster*, 975 A.2d 555, 562–63 (Pa. 2009) (citation omitted). Discharge based on an employee's refusal to commit a crime may give rise to a wrongful discharge claim, but this is "a high hurdle," requiring an employee to show she was asked "to commit an illegal act that would subject [her] to

criminal liability." *United States v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.*, No. 2:19-CV-01220, 2022 WL 14851121, at *4 (W.D. Pa. Oct. 26, 2022) (collecting cases).

A state law wrongful discharge retaliation claim can only survive where no statutory remedy exists for the alleged retaliatory discharge. *United States ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 326 (E.D. Pa. 2012); ECF 58 at 18–19. "Where the facts underlying the wrongful discharge claim are identical to the facts underlying the FCA retaliation claim, the wrongful discharge claim will typically be preempted." *Difiore v. CSL Behring, U.S., LLC*, No. 13-05027, 2014 WL 4632324, at *3 (E.D. Pa. Sept. 17, 2014) (citing *Budike*, 897 F. Supp. 2d at 327). The state law claim is not preempted, however, if the underlying facts are "completely independent and unrelated" to the facts supporting the FCA retaliation claim. *Id.*

Here, Christian alleges her employer repeatedly asked her to violate Pennsylvania's criminal law prohibiting the use of false or misleading statements to induce others to invest or provide property or credit. SAC ¶¶ 233–34; *see also* 18 Pa. C.S.A. § 4107. In support of this claim, she "reasserts the allegations . . . specifically as plead within Count III of her Complaint," pertaining to the FCA retaliation claim. *Id.* ¶ 232. The only acts Christian alleges Hodson asked her to undertake involved reinstating the contract with the State of West Virginia that led to the 2022 Reimbursements and the 2023 Loan—both of which underlie her FCA retaliation claim. Absent allegations involving "completely independent and unrelated" facts, the FCA preempts Christian's state law wrongful discharge claim.

Additionally, even if Christian had pled "completely independent and unrelated" facts, all the alleged actions occurred in West Virginia, not Pennsylvania. To sustain a wrongful discharge claim in Pennsylvania, Christian must show her termination "implicates a clear mandate of public policy *in this Commonwealth*." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000) (emphasis added). In this context, public policy means Pennsylvania's "own Constitution, court decisions and statutes promulgated by [the Pennsylvania] legislature." *Id.* at 288 (explaining that termination in retaliation for reporting OSHA violation to employer does not "undermine the workings of any Commonwealth agency or any statutory mechanism within the Commonwealth"). Omnis argues Christian alleges only that she refused to lie to government officials in West Virginia but not to any individual in Pennsylvania. ECF No. 58 at 20. This Court agrees. "The Plaintiff in some way must allege that some public policy of [Pennsylvania] is implicated, undermined, or violated because of the employer's termination of the employee." *McLaughlin*, 750 A.2d at 289 (emphasis removed). The SAC does not establish facts supporting a finding that false statements made to West Virginia officials in the State of West Virginia would "undermine the workings of any Commonwealth agency or any statutory mechanism within the Commonwealth" or implicate the public policy of Pennsylvania. *Id.* at 287–288. Accordingly, even if the common law claim was not preempted, Christian's claim does not implicate a clear mandate of Pennsylvania public policy, and her amendment with respect to Count IX would be futile.